WILLIAM D. HOPKINS, a taxpayer, v. GEORGE H. BALDWIN, Chairman, A. H. BLANDING, H. C. DUNCAN, O. J. SEMMES and ALFRED H. WAGG, as members of and constituting the Board of Control of the State of Florida, a body corporate, *et al.*

167 So. 677.

En Banc.

Opinion Filed April 10, 1936.

Rehearing Denied May 6, 1936.

650

*William D. Hopkins,* for Appellant;

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, and *Waller & Pepper,* and *Julius Parker,* for Appellees.

DAVIS, J.—The complaint in this case, brought by William D. Hopkins, a taxpayer, sought injunction to restrain the appellees, as members of the State Board of Control, from carrying to completion, in pursuance to Chapter 16981, Acts 1935 (Senate Bill No. 1044), General Laws of Florida, a plan by which the State Board of Control proposes to borrow approximately $900,000.00 from the Federal Emergency Administration Public Works, giving as sole security therefor certain revenue certificates in the nature of limited debenture on the income and revenue to be derived by the obligor State Board of Control for "fees, rentals and other charges" from students, faculty members and others using, or being served by, or having the right to use, or having the right to be served by certain dormitories and a dining hall proposed to be constructed with the money borrowed (supplemented by a 45% grant from the United States Government in aid of same) at the University of Florida at Gainesville, Florida, at the Florida State College for Women at Tallahassee, Florida, and at the Florida Agricultural and Mechanical College for Negroes at Tallahassee, Florida.

The sole security for the repayment of the borrowed money is a first, exclusive and closed lien on the income and revenue (but not any of the real property of the involved institution) derived solely from the fees, rentals and other fees and charges from students, faculty members and others using or being served by, or having the right to use or be served by, the projects to be constructed by the expenditure of the money borrowed and granted to the State Board of Control by the Federal Government pursuant to the authorizing Acts of Congress applicable in the premises.

Construed according to the legal meaning and effect of the language used, it is specially provided on the face of each proposed revenue certificate that the same is an obli-

gation of the State Board of Control only, and that it is not an obligation, general, special, or otherwise, of the State of Florida, nor a bond or debt of the State of Florida, nor enforceable against the tax revenues of the State of Florida, nor enforceable at all against any of the public funds of the State Board of Control, nor enforceable at all against any financial resource coming into the hands or management of the State Board of Control other than the specific income and revenue pledged to the holders of each certificate as' anticipated to be derived from fees, rentals and other charges proposed to be made for the use and enjoyment by students, faculty members and others of the new buildings and facilities proposed to be brought into being as a result of the embarkation by the State Board of Control upon the projects described in the resolution adopted by the State Board of Control under date of March 15, 1936.

The resolution adopted by the State Board of Control, as aforesaid, reads in part as follows:

"A RESOLUTION AUTHORIZING THE CONSTRUCTION OF THREE DORMITORIES AT THE UNIVERSITY OF FLORIDA, A DORMITORY AND A DINING HALL AT THE FLORIDA STATE COLLEGE FOR WOMEN, AND TWO DORMITORIES AT THE FLORIDA A. AND M. COLLEGE AND, TO AID IN FINANCING THE COST OF SUCH CONSTRUCTION, FOR THE ISSUANCE OF REVENUE CERTIFICATES IN THE AGGREGATE PRINCIPAL AMOUNT OF $1,167,000.00 PAYABLE FROM THE INCOME DERIVED FROM SAID DORMITORIES AND DINING HALL.

"BE IT RESOLVED by the Board of Control, a public corporation of the State of Florida, with the approval of the State Board of Education of Florida:

"Section 1. The Board of Control (herein called the 'Board') has ascertained and determined and does hereby find and declare: (a) The construction of three dormitories.

at the University of Florida at Gainesville, Florida (herein called 'Project A'), the construction of a dormitory and dining hall at the Florida State College for Women at Tallahassee, Florida (herein called 'Project B'), and the construction of two dormitories at the Florida Agricultural and Mechanical College for Negroes at Tallahassee, Florida (herein called 'Project C'), are required for the proper conduct, management, and operation of said institutions and there is an imperative and immediate need therefor; (b) It is advisable and necessary, in order to provide funds for the construction of said Projects A, B, and C, in addition to the grant expected to be made by the United States of America and the funds of the Board to be applied for the purpose of paying the costs of such construction, to borrow money and to issue therefor the special obligations of the Board of Control, to be payable and secured as hereinafter provided; (c) The United States of America, pursuant to the Emergency Relief Appropriation Act of 1935, is expected to make an offer to aid in financing the construction of Projects A, B, and C by making a grant to the Board in an amount not to exceed 45 per centum (45%) of the costs of said Project upon completion, and to purchase at par and accrued interest $1,167,000.00 aggregate principal amount of revenue certificates to be issued by the Board with the approval of the State Board of Education.

"Section 2. For the purpose of financing the construction of Project A there shall be issued revenue certificates of the Board, with the approval of the State Board of Education, in the aggregate principal amount of $522,000.00, under the authority of the Constitution and Statutes of the State of Florida, particularly Chapter 16,981, Laws of Florida, Acts of 1935. * * *

"Section 3. Said revenue certificates and the coupons thereto attached shall be in substantially the following form:

"No._____                                              $1,000.00

"UNITED STATES OF AMERICA
"STATE OF FLORIDA
"BOARD OF CONTROL
"REVENUE CERTIFICATE
"SERIES A

"THE BOARD OF CONTROL, public corporation of the State of Florida, with the approval of the STATE BOARD OF EDUCATION OF FLORIDA, for value received hereby acknowledges itself indebted and hereby promises to pay to the bearer, or if this certificate be registered, to the registered owner hereof, solely from the income and revenue pledged to the payment hereof, and not otherwise, the principal sum of ONE THOUSAND DOLLARS ($1,000.00) on the first day of December, 19__, and to pay interest on said principal sum solely from said income and revenue, and not otherwise, at the rate of four per centum (4%), payable semi-annually on the first day of June and first day of December of each year, upon presentation and surrender of the respective coupons hereto attached as they severally mature, both principal and interest being payable at Atlantic National Bank in Jacksonville, Florida, or, at the option of the holder, at the Guaranty Trust Company in the Borough of Manhattan, City and State of New York, in any coin or currency of the United States of America, which, on the respective dates of payment thereof, is legal tender for the payment of public and private debts.

"This certificate is one of a duly authorized issue of certificates, limited to an aggregate amount of $522,000.00, of like tenor and effect except as to number and maturity,

is issued pursuant to and in full compliance with the Constitution and statutes of the State of Florida, particularly Chapter 16,981, Laws of Florida, Acts of 1935, and a Resolution of Board of Control of the State of Florida entitled, 'A RESOLUTION AUTHORIZING THE CONSTRUCTION OF THREE DORMITORIES AT THE UNIVERSITY OF FLORIDA, A DORMITORY AND A DINING HALL AT THE FLORIDA STATE COLLEGE FOR WOMEN, AND TWO DORMITORES AT THE FLORIDA A. AND M. COLLEGE AND TO AID IN FINANCING THE COST OF SUCH CONSTRUCTION, FOR THE ISSUANCE OF REVENUE CERTIFICATES IN THE PRINCIPAL AMOUNT OF $1,167,000.00 PAYABLE FROM THE INCOME AND REVENUE DERIVED FROM SAID DORMITORIES AND DINING HALL,' approved by the State Board of Education of Florida and duly adopted by the Board of Control prior to the issuance hereof, and said Resolution is hereby referred to and, as to all of its terms and provisions, is made a part of this certificate.

"This certificate is issued to aid in financing the cost of construction of three dormitories at the University of Florida at Gainesville, Florida, and is payable only from the fees, rentals, and other charges from students, faculty members, and others using or being served by, or having the right to use, or having the right to be served by such dormitorities, and, together with all other certificates of the issue of which this certificate is one, is secured by a first, exclusive, and closed lien on the income and revenue (but not the real property of said University of Florida) derived from the fees, rentals, and other charges from students, faculty members, and others using or being served by, or having the right to use, or having the right to be served by such dormitories, all as in said Resolution provided.

"This Certificate is an obligation of the Board of Control, payable only in accordance with the terms hereof, and

is not an obligation general, special, or otherwise of the State of Florida. This certificate is not a bond or debt of the State of Florida, and shall not be enforceable against the State, nor shall payment hereof be enforceable out of any funds of the Board of Control other than the income and revenue pledged to the holder or holders of this certificate.

"Nothing in this certificate or in said Resolution authorizing its issuance shall be construed to authorize the Board of Control to contract a debt on behalf of, or in any way to obligate, the State of Florida, or to pledge, assign, or encumber in any way, or to permit the pledging, assigning, or encumbering in any way of, appropriations made by the Legislature, or revenue derived from the investment of the proceeds of the sale, and from the rental of such lands as have been set aside by legislative enactments of the United States, for the use and benefit of the respective State educational institutions.

"This certificate shall pass by delivery, but it may be registered as to principal in the name of the holder on the Certificate Registration Books of the Secretary of the Board of Control at Tallahassee, Florida, such registration being noted on the back hereon, after which no transfer shall be valid unless made on said books by the registered owner and similarly noted on the back hereof, but it may be discharged from registry by being transferred to bearer on said books of the Secretary of the Board of Control and thereafter shall be transferable by delivery, but it may be again, from time to time, registered or transferred to bearer as before. No such registration as to principal shall affect the negotiability of the coupons attached hereto, which shall continue to pass by delivery merely.

"It is hereby certified, recited, and declared that all acts, conditions, and things required by the Constitution and Statutes of the State of Florida and by the resolutions of the Board of Control to exist, to happen, and to be performed precedent to and in the issuance of this certificate exist, have happened, and have been performed in regular and due time, form, and manner as required by law, and that the revenues and income derived from the dormitories hereinabove described have been lawfully and irrevocably pledged to the payment of the principal hereof and the interest hereon.

"IN WITNESS WHEREOF, the Board of Control, a body corporate of the State of Florida, with the approval of the State Board of Education of Florida, has caused this certificate to be executed in its name by its Chairman, and its seal to be hereunto affixed and to be attested by the Secretary of said Board of Control and to be countersigned by the Secretary of the Board of Education of Florida, and the interest coupons hereto annexed to be executed by the facsimile signature of said Chairman, which official by the execution hereof, does adopt as and for his own proper signature, his facsimile signature appearing on said coupons, all as of the first of December, 1935.

"(SEAL)

"BOARD OF CONTROL,

"By _____

"Attest:                                    "Chairman.

_____

"Secretary.

"COUNTERSIGNED:

_____

"Secretary, State Board of Education of Florida.

"(Form of Coupon)

"No._____                                    $20.00

"On the_____day of_____, 19__, the Board of
Control, a public corporation of the State of Florida, will
pay to the bearer hereof, solely from the income and reve-
nue pledged to the payment hereof, and not otherwise,
TWENTY DOLLARS, at the Atlantic National Bank, in Jack-
sonville, Florida, or at the option of the holder, at the office
of the Guaranty Trust Company of the City of New York,
in the Borough of Manhattan, City and State of New York,
in any coin or currency of the United States of America
which, at the time of payment hereof, is legal tender for the
payment of public and private debts, being six months in-
terest then due on its revenue certificate Series A dated De-
cember 1, 1935, and numbered_____.

                        "(Facsimile  Signature)

                        _____
                                            "Chairman.

\* \* \*

"Section 5.   Said certificates are payable from, and se-
cured by a first, exclusive, and closed lien on the income
and revenue (but not the real property of the University of
Florida) derived from fees, rentals, and other charges from
students, faculty members and others using or being served
by, or having the right to use, or having the right to be
served by the three dormitories herein required to be con-
structed at the University of Florida at Gainesville, Flor-
ida.   Said certificates shall be obligations of the Board pay-
able only in accordance with the terms thereof, and shall
not be obligations general, special, or otherwise of the State
of Florida.   Said certificates are not a bond or debt of the
State of Florida, and shall not be enforceable against the
State, nor shall payment thereof be enforceable out of any

funds of the Board other than the income and revenue pledged to the holder or holders of such certificates. Nothing in said certificates or in this Resolution shall be construed to authorized the Board to contract a debt on behalf of, or in any way to obligate, the State of Florida, or to pledge, assign, or encumber in any way, or to permit the pledging, assigning, or encumbering in any way, of appropriations made by the Legislature or revenue derived from the investment of the proceeds of the sale, and from the rental of such lands as have been set aside by legislative enactments of the United States, for the use and benefit of the respective State education institutions.

"Section 6. The Clerk of the Board is hereby authorized and directed, upon receipt of payment for said certificates Series A or any part thereof, to set aside and deposit in the 'Series A Certificate Fund' (hereinafter provided) the amount of such payment representing the interest accrued on any such certificates to the date of payment of the purchase price thereof and the amount, if any, of such payment which shall be estimated to accrue during the period of construction of Project A and for six months thereafter of the principal amount of said certificates Series A. The remaining proceeds received by said Secretary from the sale and delivery of the certificates shall be set aside and deposited by said Secretary in a separate account to be known as the 'Project A Construction Account' in a bank or banks which are members of the Federal Reserve System. The monies in said Project A Construction Account shall be used solely for the purpose of paying the costs of construction of Project A in the manner and subject to the terms and conditions provided in any contract or agreement with the purchaser or purchasers of any certificates. Any unexpended balance remaining after the payment of the costs

of such construction shall be used for the repurchase of the certificates at a price not to exceed par and accrued interest, or shall be set aside and deposited in the Series A Certificate Fund.

"Section 7. The three dormitories required to be constructed at the University of Florida at Gainesville, Florida, shall be operated on a fiscal year basis, commencing on the 1st day of July in each year and ending on the 30th day of June next following. From and after the date of the completion of Project A, the Board shall pay, out of the income and revenue derived from fees, rentals, and other charges from students, faculty members and others using or being served by, or having the right to use, or having the right to be served by the three dormitories at the University of Florida in Gainesville, Florida, herein required to be constructed,

"(a) Into a separate fund to be known as the "Series A Certificate Fund,' during each year in approximately equal monthly installments commencing on July 1, and ending on June 30 in each year, such amount as is required to pay,

"(1) A sum equal to one hundred per centum (100%) of the principal of all of said certificates maturing during the next succeeding fiscal year.

"(2) A sum equal to one hundred per centum (100%) of the interest becoming due in such next succeeding fiscal year on all outstanding certificates, and, in addition in order to provide a reserve in such fund,

"(3) A sum at least equal to twenty per centum (20%) of the aggregate of the amounts defined by (1) and (2); payment of the additional funds defined by (3) shall be continued until there is in Series A Certificate Fund an amount equal to the aggregate of the amounts defined in (1) and (2), plus all the principal and interest payments maturing and becoming due during the next two fiscal years after the

fiscal year referred to in (1) and (2) above; no payments need be made into the Series A Certificate Fund when and so long as the amount in said Fund is at least equal to the aggregate principal amount of interest due and thereafter becoming due on said certificates; but if in any month for any reason the Board shall fail to pay into said Fund the amounts herein required, then an amount equal to any deficiency in the amount paid into said Fund in such month shall be added to the amount otherwise required to be paid into said Fund in the next succeeding month; any moneys at any time paid into the Series A Certificate Fund shall be held by the Board in trust for the benefit of the holders and owners from time to time of the certificates and coupons annexed thereto entitled to be paid from such moneys, and the Board shall not have any beneficial right or interest in any such moneys; all moneys in said fund shall be deposited in a bank or banks which are members of the Federal Reserve System and all sums in excess of an amount sufficient to discharge all principal and interest payments becoming due within the next twelve months period shall be continuously secured by or invested in direct obligations of the United States of America or obligations unconditionally guaranteed as to principal and interest by the United States of America, which obligations shall be at all times at least equal in market value to the amount of moneys in said Fund to be secured; the moneys in said Fund shall be used solely for the purpose of paying the principal of and interest on the certificates issued hereunder and for no other purpose.

"(b) Into a separate fund to be known as the 'Project A Operation and Maintenance Fund,' after making the above required payments into the Series A Certificate Fund, during each month an amount sufficient for the purpose of paying

all reasonable costs of operation and maintenance of said Project A, including reserves for extraordinary repairs, insurance, and maintenance, for such month, which moneys shall be used for such purpose and for no other purpose; but if any month for any reason, the Board shall fail to pay such amount into said Project A Operation and Maintenance Fund, then an amount equal to any deficiency in the amount paid into said Fund in such month shall be added to the amount otherwise required to be paid into said Fund in the next succeeding month.

"Any of the gross income and revenue derived from Project A and remaining after the above required payments into the Series A Certificate Fund and the Project A Operation and Maintenance Fund have been made, may be used for any lawful purpose.

"Section 8. The Board hereby covenants and agrees with the several holders and owners of Revenue Certificates Series A issued under the provisions of this Resolution, as follows:

"(a) That so long as any revenue certificate Series A issued under the provisions of this Resolution shall remain outstanding and unpaid, it will fix, maintain, and collect an amount of the fees, rentals, and other charges from students, faculty members, and others using or being served by, or having the right to use, or having the right to be served by Project A, which shall be at least sufficient, after making reasonable allowances for contingencies and for a margin of error in the estimate, to maintain the Series A Certificate Fund and the Project A Operation and Maintenance Fund as provided by this Resolution:

"(b) That it will make and enforce parietal rules that shall insure the use of Project A by all students in attendance at the University of Florida to the maximum extent

to which Project A is capable of serving such students or of serving faculty members.

"(c) That so long as any Revenue Certificate Series A issued under the provisions of this Resolution remains outstanding and unpaid, it will not

"(1) Voluntarily create or cause to be created any debt, lien, pledge, assignment, encumbrance, or other charge having priority to or being on a parity with the lien of said revenue certificates Series A upon any of the income and revenues derived from fees, rentals, and other charges from students, faculty members, and others using or being served by, or having the right to use, or having the right to be served by Project A, or

"(2) Convey or otherwise alienate said Project A or the real estate upon which said Project A shall be located, except at a price sufficient to pay all such revenue certificates Series A then outstanding and interest accrued thereon, and then only in accordance with any agreements with the holder or holders of such revenue certificates Series A, or

"(3) Mortgage or otherwise voluntarily create or cause to be created any encumbrance on such Project A or the real estate upon which it shall be located.

"(d) That it will not issue any obligation payable from the income and revenue of Project A unless the lien of such obligations upon such revenues shall be junior and subordinate to the lien of the revenue certificates Series A herein authorized.

"(e) That it will at all times preserve and protect the security of said certificates and the rights of the holders thereof under this Resolution, and that it will at all times maintain, preserve, and keep, or cause to be maintained, preserved, and kept Project A in good repair and condition, and will from time to time make or cause to be made all

necessary and proper repairs and replacements so that at all times the business carried on in connection therewith may be properly and advantageously conducted in a manner consistent with prudent management.

"(f) That it will at all times keep proper books of records and accounts in which full, true and correct entries will be made of all its dealings and transactions relating to Project A in accordance with standard principles of accounting, and that it will prepare and furnish to the original purchaser and to any holder or holders of any certificates, upon written request of such holder or holders, not more than 30 days after the close of each semi-annual fiscal period, complete operating and income statements of Project A in reasonable detail covering such semi-annual period, and not more than 60 days after the close of each fiscal year complete financial statements of the Board and the system covering such fiscal year, certified by independent auditors.

"(g) That it will maintain insurance on Project A for the benefit of the holders of certificates Series A issued under this Resolution so long as any of such certificates or the interest shall remain outstanding and unpaid, of a kind and in an amount which usually would be carried by a private corporation operating a similar type of undertaking. The proceeds of any insurance, other than for loss of use and occupancy, shall be used only for (a) reconstruction, replacements, or repairs, or (b) payments into the Series A Certificate Fund. During the period of loss of use and occupancy, total or partial, resulting from risks and perils against which other insurance is or should be carried pursuant to this section, the proceeds of any such use and occupancy insurance shall be administered, held, and applied for the same purposes and in the same manner as provided

by this Resolution for the use, disposition, and application of the gross income and revenue of Project A.

"(h) That it will permit at all reasonable times so long as any of the certificates are outstanding, any holder or holders of twenty per centum (20%) in principal amount of such certificates then outstanding to inspect Project A and all accounts and records thereof.

"None of the foregoing covenants shall be construed as requiring the expenditure by the Board of any funds other than the income and revenues received or receivable from Project A.

"Section 9. In the event of a default in the payment of the principal of or interest on any revenue certificates Series A issued under this Resolution, which default shall continue for a period of sixty (60) days, the holder or holders of twenty per centum (20%) in principal amount of certificates then outstanding shall be entitled as a strict matter of right to the appointment of a receiver, which receiver may enter and take possession of Project A, operate and maintain the same, prescribe rates, and collect, receive and apply all income and revenue thereafter arising therefrom in the same way as the Board itself might do. Unless the Court shall otherwise direct, whenever all that is due upon such certificates and installments of interest and under any of the provisions of this Resolution shall have been paid and all defaults made good, said receiver shall surrender possession to the Board, and the same right to a receiver shall exist upon any subsequent default. This section shall not be construed as limiting the right of any holder of a certificate to apply for the appointment of a receiver in the discretion of the Court, nor to limit the rights or remedies of any holder of certificates or interest coupons under the Laws of Florida.

"Section 10. The rights and duties of the Board and of the holders of the revenue certificates Series A and the coupons annexed thereto and the terms and provisions of this Resolution may be modified or altered in any respect by resolution of the Board with the consent of such holder or holders of seventy-five per centum (75%) in principal amount of all the certificates then outstanding, such consent to be evidenced by an instrument or instruments executed by such holder or holders and duly acknowledged or proved in the manner of a deed to be recorded, and such instrument or instruments shall be filed in the office of the Secretary of the said Board and shall be a public record. * * *

"Section 30. All resolutions, by-laws, and regulations of the Board in conflict with this Resolution are hereby repealed.

"Section 31. After said revenue certificates are issued, the provisions of this Resolution applicable to each Series shall be and remain irrepealable until the revenue certificates of such Series and the interest thereon shall have been fully paid, satisfied, and discharged.

"Section 32. It is hereby declared that the sections, clauses, sentences, and parts of this Resolution are severable, are not matters of mutual essential inducement, and any of them may be exscinded by any court exercising final jurisdiction in a cause, if this Resolution would be otherwise unconstitutional or ineffective. It is the intention hereof to comply in all respects with the Constitution and Statutes of the State of Florida, and if any one or more sections, clauses, sentences, and parts of this Resolution shall for any reason be questioned in any court and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair, or invalidate the remaining provisions hereof, but shall be confined in its operation to the specific provision or pro-

visions so held unconstitutional or invalid, and the inapplicability or invalidity of any section, clause, sentence, or part of this Resolution in any one or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance.

"This Resolution shall become effective immediately upon its passage."

As will be observed from the plan of financing discernible from the terms of the foregoing resolution, adopted by the State Board of Control, the resolution itself is well within the terms and conditions of "The Educational Institutions Act of 1935," which is Chapter 16981, *supra.*

If, as urged by appellant, said Act has attempted to vest broader and more extensive debt incurring powers in the State Board of Control, than those that have been actually and in fact exercised by the said Board in and by the resolution and plan already adopted, the Act, if deemed unconstitutional and later so held in such particulars, is nevertheless amply sufficient under the Constitution to sustain the funding powers and discretion that has been already exercised under the Act insofar as is concerned the particular resolution hereinbefore quoted and to that extent the Act is to be deemed complete and effectual as a constitutional and valid exercise of legislative power in the premises.

The remedies made available under Section 7 of the Act do not render the statute invalid, because such remedies are applicable only to the particular funds that are represented by the pledged fees, rentals and other charges contemplated to be derived from the specified outside sources, as charges for the use of the new facilities, and not from appropriations of money made by the State, or raised pursuant to law under its authority.

Therefore, the plan here considered is not objectionable as part of a scheme or subterfuge intended to indirectly involve or obligate the State to hereafter pay, or cause to be paid out of public funds, or from tax resources, any part of the sums anticipated to be derived in the form of fees, rentals or other charges made for use or enjoyment of the newly to be constructed buildings. This is especially so in view of Section 10 of the Act which expressly prohibits such obligating of the State with respect to public funds or moneys derived from any tax resource of the State, or from its counties, municipalities or taxing districts in the light of which Section 7 of the Act is to be read and construed.

Furthermore, the fees, rentals and other charges provided to be imposed and collected for the use of the proposed new buildings, will constitute a proprietary fund *in esse* from the very moment the new buildings are constructed and put into use, and therefore may be anticipated and funded in the form of revenue anticipation certificate debentures in like manner as the water revenues considered and dealt with in the case of State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6, and in Board of County Commissioners of Pinellas County, 123 Fla. 619, 167 So. 386, were held to be fundable in the form of revenue anticipation certificates that do not involve nor contemplate the obligation of any part whatever of the State's sovereign revenue raising powers in order to make them effectual and complete for the purposes for which they are provided to be issued, and which do not amount to a mortgage or lien or any charge whatever upon any physical property or franchise held, owned or inuring to the benefit of the State or any of its political subdivisions or agencies.

Upon the considerations aforesaid, and upon the authority of Board of County Commissioners of Pinellas County v.

Herrick, *supra,* and the several authorities therein cited, we hold that neither Chapter 16981, Acts of 1935, *supra,* nor the Resolution adopted by the State Board of Control as hereinbefore quoted and referred to, will result in the creation of any illegal bonded or other debt of the State of Florida in violation of Amended Section 6 of Article IX of the State Constitution, and that therefore the Chancellor below committed no error in denying the injunction prayed for in appellant's bill of complaint.

Should any attempt be hereafter made to have the State appropriate for, or to divert any State tax resources or revenues to, the retirement in whole or in part of the revenue certificates so proposed to be issued, appropriate relief against such unauthorized act may be hereafter had in due course of legal procedure, if and when some overt act has transpired evidencing an intention on the part of the State Board of Control, or other State agency or officer or any person, or on the part of the Legislature, to circumvent the provisions of Amended Section 6 of Article IX of the Constitution by unconstitutionally assuming indirectly an obligation for the repayment of borrowed money, with interest, that cannot be directly incurred as an obligation of the State of Florida payable, or subject to being satisfied in whole or in part out of State revenues or by a resort to State tax resources, as a means of paying same. The record of the present case now before the Court indicates a clear intent to stay within constitutional limitations by confining the obligation to be incurred to parietal revenues that are to pass through the State's hands, and which are to be derived solely as a *quid pro quo* for the use and enjoyment of new facilities to be owned by the State, but the revenue from which is not to become State funds so long as money borrowed for the purposes of the projects involved remains

670

unrepaid to the United States Government, or the assignors of the certificates proposed to be issued to it, under Chapter 16981, *supra*.

The order appealed from, construed in the light of what has been discussed and held in this opinion, is free from error and is therefore affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.