T. L. BROOKS, Intervenor, v. CITY OF JACKSONVILLE, as Petitioner, and STATE OF FLORIDA, as Respondent.

173 So. 365.
Opinion Filed March 27, 1937.

*Truett & Shea,* for Appellant;

*Austin Miller,* for Appellee.

DAVIS, J.—The City of Jacksonville is governed by and acts under Chapter 3775, Acts of 1887, as from time to time amended and supplemented by subsequent Acts of the Legislature. By its charter it is authorized to own, operate and maintain a municipal electric light plant and has done so for many years last past.

On January 12, 1937, the Jacksonville City Council (the municipality's legislative body) duly enacted an ordinance No. X-118, as follows:

"AN ORDINANCE Providing for the Construction of Extensions and Improvement to the Municipal Electric Plant of the City of Jacksonville, Florida, so as to Increase the Appliances for the Manufacture and Distribution of Electricity as may be Necessary to Furnish Same to Those Taking and Using such Electricity; and for the Issuance of $1,250,000.00 Revenue Certificates of the City of Jacksonville, Florida. Payable Solely from the Revenues Derived from the Operation of said Electric Plant to Finance the Cost of Such Construction.

"BE IT ORDAINED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF JACKSONVILLE:

"SECTION 1. It is hereby ascertained, determined and declared that:

"(a) . The City of Jacksonville, Florida, (hereinafter called the 'City') now owns, operates and maintains a municipal electric plant; the construction of which was financed by the issuance of general obligation bonds of said city, for the payment of which bonds said City was required by law to levy and collect an ad valorem tax upon all taxable property located within the territorial confines of said city.

"(b) The net revenue of such Electric Plant during the last four fiscal years has amounted to the following sums:

| Fiscal Years | Net Revenue |
|---|---|
| 1932 | $1,869,555.00 |
| 1933 | 1,828,217.00 |
| 1934 | 1,715,543.00 |
| 1935 | 1,756,785.00 |

and during the first ten months of 1936 has amounted to $1,566,878.00. The estimated net revenue of said Electric Plant above all expenses of operation and other charges thereon in each fiscal year after the construction of the said extensions and improvements to said Electric Plant hereinafter referred to, is in excess of the amount to become due in each such fiscal year for principal and interest of the certificates hereinafter provided for.

"(c) It is necessary and desirable to construct extensions and improvements to said Municipal Electric Plant, such extensions and improvements to consist of new turbine and boilers and auxiliary equipment so as to increase the appliances for the manufacture and distribution of elec-

tricity as may be necessary to furnish same to those taking and using such electricity.

"SECTION 2. For the purpose of financing the cost of constructing said extensions and improvements, there shall be issued negotiable Electric Revenue Certificates of the City of Jacksonville, Florida, (hereinafter called the Certificates) in the aggregate principal amount of $1,250,000.00 which certificates shall be dated May 1, 1937, in the denomination of $1,000.00 each, numbered from 1 to 1250, both inclusive, in order of maturity, shall bear interest at a rate not to exceed the rate of six (6%) per centum per annum, to be definitely fixed by the City Commission, approved by the Mayor and concurred in by the City Council of said City, such interest payable semi-annually on November 1, and May 1 in each year, first interest being payable November 1, 1937, payable as to both principal and interest at the office of City Treasurer in the City of Jacksonville, Florida, or at Manufacturers Trust Company, the fiscal agency of the City of Jacksonville, in the City of New York, State of New York, at the option of the holder, in such coin or currency as is, on the respective dates of payment of the same, legal tender for the payment of public and private debts; shall be registerable as to principal only at the option of the holder and shall mature serially on May 1, in the years and amounts as follows, to-wit: .

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1938 | $100,000.00 | 1944 | $100,000.00 |
| 1939 | 100,000.00 | 1945 | 100,000.00 |
| 1940 | 100,000.00 | 1946 | 100,000.00 |
| 1941 | 100,000.00 | 1947 | 100,000.00 |
| 1942 | 100,000.00 | 1948 | 100,000.00 |
| 1943 | 100,000.00 | 1949 | 150,000.00 |

Said certificates shall be signed by the Chairman and Secretary and one member of the City Commission of said City and sealed with the seal of said City Commission; and the interest coupons attached to said certificates shall be authenticated by the facsimile signature of the City Treasurer of said City.

"SECTION 3. The City Commission of said City may, from time to time, with the approval of the Mayor and City Council, sell all or any part of said Certificates for not less than par and accrued interest, at either public or private sale, as hereinafter provided; and may on the 1st day of May, 1937, or at any time thereafter, issue and deliver all of said certificates which shall have been so sold. In the sale of said certificates, the City Commission shall agree with the purchaser or purchasers thereof upon the rate of interest, not exceeding six (6%) per centum per annum, said certificates shall bear and before the issuance or delivery of any of said certificates, the definite rate of interest said certificates shall bear shall be declared and determined by a resolution of the City Commission, which resolution shall be approved by the Mayor and concurred in by the City Council; but before said certificates are sold at public sale, notice of said sale shall be published at least twice in a newspaper of general circulation published in Jacksonville, Florida, the first publication to be not less than seven (7) days before the date fixed for the sale, and shall state the time and place of said sale, when and where sealed bids will be received, the amount of certificates, the dates, maturities, maximum rate of interest, interest payment dates, and the amount which must be deposited with the bid to secure its performance if accepted. Said notice shall also require the bidders to fix the interest rate that the certificates are to bear, which shall not exceed (6%) per cen-

tum per annum. If no bids are received at such public sale, or if all bids are rejected, the certificates may be sold, without notice at private sale, at any time within one year thereafter, but such certificates shall not be sold at private sale on terms less favorable to the City than were contained in the best bid at the directly prior advertised sale. That any and all sales of said certificates shall, before the delivery thereof, be approved by the Mayor and City Council.

"SECTION 4. The Certificates and coupons attached thereto shall be in substantially the following form, the blanks left for the number of each certificate and the time when it becomes due to be filled in as the number of the certificate and the time of payment may render necessary, and the blanks left for the rate of interest to be filled in as the rate of interest may be determined as herein provided, to-wit:

"No._____                    $1,000.00
"UNITED STATES OF AMERICA
"STATE OF FLORIDA
"CITY OF JACKSONVILLE
"ELECTRIC REVENUE
"CERTIFICATE

"The City of Jacksonville, in the County of Duval, a municipal corporation of the State of Florida, for value received, hereby promises to pay to bearer, or, if this certificate be registered as hereinafter provided, to the registered holder hereof, solely from the Certificate Fund provided therefor as hereinafter set forth, the principal sum of ONE THOUSAND DOLLARS ($1,000.00) on May 1, 19____, and to pay interest on said principal sum semi-annually from said Certificate Fund, at the rate of____per centum (____%) per annum on May 1 and November 1 in each year until maturity of the principal sum hereof, upon the

presentation and surrender of the annexed interest coupons as they severally become due. Both principal and interest are payable at the office of the City Treasurer in the City of Jacksonville, Florida, or, at the option of the holder, at Manufacturers Trust Company, the fiscal agency of the City of Jacksonville in New York City, New York, in any coin or currency which on the respective dates of payment of the same is legal tender for the payment of public and private debts.

"This Certificate is one of an authorized issue limited to an aggregate principal amount of One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000.00), all of like date and tenor, except as to number and maturity, issued by said City under the authority of and in full compliance with the Constitution and Statutes of the State of Florida, particularly the Charter of said City and Ordinance No. X-118 duly adopted by the City Council of said City on the 12th day of January, 1937, providing for the construction of certain extensions and improvements to the Municipal Electric Plant of said City. Said Ordinance provides that the City shall fix and maintain rates and collect charges for facilities and services afforded by the said Municipal Electric Plant which will provide revenues sufficient at all times, to pay the cost of operation, maintenance and repairs of said Municipal Electric Plant, and to pay into the Certificate Fund created and designated by said Ordinance as 'Electric Revenue Certificates Sinking Fund' a sufficient amount of revenues over and above such cost of operation maintenance and repairs, to pay the interest on and the principal of said Certificates as the same respectively become due.

"This certificate, at the request of the holder or owner

thereof, may be registered as to principal only, the registration thereof being noted on the Certificate.

"IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required by the Constitution and Statutes of the State of Florida and by the Ordinances of the City of Jacksonville above referred to, to exist, happen and be performed precedent to and in the issuance of this Certificate, have existed, have happened and have been performed in due time, form and manner as required by law.

"IN WITNESS WHEREOF, The City of Jacksonville, in the County of Duval, State of Florida, has caused this certificate to be signed by the Chairman and Secretary and one member of the City Commission, the seal of the City Commission to be hereto affixed, and the interest coupons hereto attached to be authenticated by the facsimile signature of the City Treasurer.

> "CITY OF JACKSONVILLE, FLORIDA,
> "Acting by and through its City Commission,
> "By_____
> "Chairman of the City Commission.
> "_____
> "Secretary of the City Commission.
> "_____
> "Member of the City Commission.
> "(Seal of the City Commission).

"Countersigned and registered in compliance with the Ordinance of the City of Jacksonville, Florida, this_____ day of_____, A. D. 1937.

> "_____
> "City Auditor.

"(Validation Endorsement.)

"Validated and confirmed by decree of the Circuit Court of the Fourth Judicial Circuit of Florida, in and for Duval County, rendered_____, 1937.

"_____
"Clerk of the Circuit Court in and for Duval County, Florida.

"(Form of Coupon.)

"No_____        $_____

"On the first day of_____, 19____, the City of Jacksonville, Florida, will pay to the bearer hereof at the office of the City Treasurer in the City of Jacksonville, Florida, or, at the option of the holder, at Manufacturers Trust Company, the fiscal agency of the City of Jacksonville in New York City, solely from the Certificate Fund described in the attached Certificate,_____Dollars ($_____) in any coin or currency which, on the date of payment of this coupon, is legal tender for the payment of public and private debts, being six months interest then due on its Electric Revenue Certificate dated May 1, 1937, and numbered_____.

"City of Jacksonville, Florida,
"By C. W. Hendly,
"City Treasurer."

"Section 5. Said Certificate shall be payable to bearer and shall be delivered by the City Commission upon the sale thereof, as hereinabove provided, whereupon said Certificates shall become payable to the lawful bearer thereof; provided, however, that said Certificates may be registered as to principal only, as hereinafter provided, in which event the same shall be payable only to the registered owner thereof, as hereinafter provided. It shall be the duty of

the City Auditor, when any of said Certificates ares old or issued, to register the same in a book to be kept for that especial purpose.

"SECTION 6. Said Certificates may, at the request of the holder or owner thereof, be registered as to principal only, on the books of the City of Jacksonville, such registration to be noted on the Certificate by the City Auditor, and thereafter no change in registration shall be made except on the books of the City unless the transfer shall be made to bearer, after which the Certificates shall be transferable by delivery. After registration, said Certificates shall continue subject to successive registration and transfers to bearer at the written request of each holder thereof.

"Whenever any of said Certificates shall be registered, they shall not be transferred on the books of the City except upon an assignment in writing, signed by the registered holder of the bonds, or his legal representative, in the presence of two witnesses, and acknowledged before a Notary Public, which assignment shall be filed and kept on record by the City Auditor, and at the time of filing said assignment the City Auditor shall note on the Certificates the registration thereof as to principal, as hereinafter provided. Whenever any Certificate is registered by the holder, as to principal, a Certificate of registration shall be endorsed thereon substantially in the following form, to-wit:

" 'The within certificate has, at the request of the holder, been registered as to principal, in the holder's name, registration being noted below. This Certificate can be transferred only by assignment in writing, signed by the registered holder or his legal representative, in the presence of two witnesses, and acknowledged before a Notary Public, on presentation and delivery of said assignment at the office of the City Auditor, Jacksonville, Florida, for registration:

but this Certificate may be discharged from registration by being transferred to bearer, such transfer being note by the City Auditor, below, after which it shall be transferable by delivery.'

" 'The registration of this Certificate as to principal does not restrain the transferability of the coupons by delivery only.

"Date of Registration.

_____

"In Whose Name Registered.

_____

"City Auditor.

_____

"SECTION 7. There is hereby created and established an 'Electric Revenue Certificates Sinking Fund' (hereinafter called the 'Certificate Fund') into which shall be paid in approximately equal monthly installments during each fiscal year while such Certificates, or any of them outstanding or unpaid, an amount equal to one hundred per cent (100%) of the amount required to pay:

"(1)   The next maturing installment of principal of any of said Certificates.

"(2)   The interest payments to fall due on all outstanding Certificates up to and including the date of the next maturing installment of principal of any of said Certificates, and

"(3)   The monies in said Certificate Fund shall be used solely for the purpose of paying the principal of, and the interest on, the Certificates and for no other purpose. All monies in said Certificate Fund shall be deposited in a bank, or banks, which are members of the Federal Reserve System and shall be continuously secured by direct obligations of the United States of America, which obli-

gations shall be at all times at least equal in market value to the amount of monies in said Certificate Fund.

"SECTION 8. The City hereby covenants and agrees with the holders of such Certificates that while any of the Certificates or coupons issued hereunder are outstanding and unpaid;

"(a) The City will maintain the Municipal Electric Plant in good condition, and operate the same in an efficient manner and at reasonable cost.

"(b) The City shall fix and maintain rates and collect charges for the facilities and services afforded by the Municipal Electric Plant which will provide revenue sufficient at all times to pay the cost of operation, maintenance and repairs of and all other charges against said Municipal Electric Plant and to maintain the certificate Fund as hereinbefore provided by Section 7 hereof. The City will make reasonable payment into the Revenue Fund for the facilities and services afforded to the City and all departments thereof by the Municipal Electric Plant.

"(c) The City will not sell, mortgage, lease or otherwise dispose of any property essential to the proper operation of the Municipal Electric Plant.

"(d) The City will maintain insurance on the Municipal Electric Plant of the kind and in an amount which usually would be maintained by private corporations owning and operating a similar undertaking.

"(e) The City will keep proper books of record and account, separate from all other records and accounts, in which complete and correct entries shall be made in accordance with standard principles of accounting, of all transactions relating to the Municipal Electric Plant. The City shall furnish to the holder of any of the Certificates

at the time outstanding at the written request of such holder, not more than thirty days after the close of each six month fiscal period complete operating and income statements of the Municipal Electric Plant in reasonable detail covering such six months period, and not more than sixty days after the close of each fiscal year complete financial statements of the Municipal Electric Plant in reasonable detail covering such fiscal year and certified by independent auditors if so required.

"(f)  Any holder of any Certificate issued hereunder shall have the right at all reasonable times to inspect the Municipal Electric Plant and all records and accounts thereof.  None of the foregoing covenants shall be construed as requiring the City to expend any funds other than the revenues derived from the operation of the Municipal Electric Plant, except for the payment by the City of a reasonable amount for the facilities and services afforded the City and all departments thereof by such Municipal Electric Plant.

"SECTION 9.  No taxes shall ever be levied and no monies shall ever be taken or diverted from any funds of the City for the payment of the principal or of interest on the Certificates issued hereunder except as hereinbefore expressly provided.

"SECTION 10.  All ordinances and parts of ordinances in conflict herewith are to the extent of such conflict hereby repealed.

"SECTION 11.  This Ordinance shall be in force and effect from and after its passage by the City Council, approved by the Mayor and due publication."

Proceedings had under the foregoing ordinance have culminated in a decree of the Circuit Court of Duval County validating $1,250,000.00 revenue certificates proposed to be

issued in accordance therewith. That decree is now before this Court for review upon the appeal of an intervening taxpayer who unsuccessfully objected in the Court below to the validation of said certificates. His assertion of the invalidity of the proposed certificates is bottomed on statutory as well as organic provisions alleged to be violated, but principally upon the broad constitutional ground that the proposed certificates about to be issued are in contemplation of law *municipal bonds* that have not been balloted upon or approved by the affirmative vote of a majority of the freeholder electors of the City of Jacksonville cast in accordance with the requirements of Amended Section 6 of Article IX of the Constitution of Florida.*

The jurisdiction of this Court to entertain the appeal and to review the record and proceedings had in the Circuit Court, has been properly invoked by appellant pursuant to the judicial validation of bonds statute and the course of *nisi prius* and appellate provided for thereunder. See Sections 5106-5112 C. G. L., 3296-3302 R. G. S.

In passing upon the objections raised the Circuit Court found as matters of law and fact the following:

---

*Amended Section 6 of Article IX above referred to reads as follows: "The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts, or municipalities shall participate, to be held in the manner prescribed by law; but the provisions of this law shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such counties, districts, or municipalities."

(1) · That the revenue certificates sought to be validated do not come within the purview and meaning of Section 6 of Article IX of the Constitution of the State of Florida, not being bonds or general. obligations of the City of Jacksonville but upon the contrary, certificates of indebtedness secured solely by the net revenue of petitioner's electric plant and for which no tax may ever be levied.

(2) The charter authority of the City of Jacksonville to maintain a municipal electric light plant in its proprietary capacity authorizes the City to anticipate its electric revenue collections in order to raise funds for essential additions to its plant.

(3) That the extensions and improvements sought to be financed by the issuance of said electric revenue certificates are such increased appliances for the manufacture and distribution of electricity as may be necessary to furnish the same to the takers thereof, and no more, and therefore come within the exceptions of the general provisions of Section 1929, Revised General Statutes of the State of Florida, 1920.

(4) That the provisions of Section 1 of Chapter 4239 of the Acts of the Legislature of the State of Florida, 1893, do not apply to the certificates herein sought to be validated, the Supreme Court of Florida having so held in Ricker v. State of Florida, 93 Florida, page 199.

(5) That the provisions contained in the several ordinances and resolutions of petitioner mentioned neither constitute exclusive pledges or limit such pledges in the future of the net revenues of petitioner's electric plant, but upon the contrary, are mere reiterations of the general pledge contained in Section 81 of the Charter of. the City of Jacksonville, both prior to and after amendment, the

same having been so held by the Supreme Court of Florida in the case of Boatright v. City of Jacksonville, 117 Fla. 477.

(6) That the electric revenue certificates herein sought to be validated are to be used for the purpose of raising funds necessary in order to finance the cost of installation of new turbine and boilers and auxiliary equipment necessary for the continued operation of the said electric plant and that the issuance of said electric revenue certificates and the improvements financed by the sale thereof will save, preserve and secure said electric plant for the benefit of petitioner, its citizens and any and all persons financially interested therein by ownership of bonds secured by the income thereof or otherwise, and that all of said bonds heretofore issued by petitioner are not only secured by the net revenues of the electric plant of petitioner but also of the Municipal Docks and Terminals, the Municipal Waterworks. and the full taxing power of the petitioner; that therefore the pledge of the net income of the said electric plant to secure the payment of the electric revenue certificates hereby sought to be validated is a superior and paramount pledge and a paramount lien to all other pledges of or liens upon said net revenues of said electric plant.

(7) That the estimated revenues of petitioner's several utilities, its Municipal Electric Light Plant, Municipal Docks and Terminals and Municipal Waterworks, based upon past performance, are ample to retire not only the outstanding bonded debt of the petitioner, both principal and interest, maturing during the years 1938 to 1949, both inclusive, together with the certificates hereby sought to be validated, without pledging the rate-making power to be exercised in the future. Especially is this true in view of the fact that the entire taxing power of the petitioner is

also pledged to secure its present bonded debt, which taxing power is unlimited.

It thereupon entered its decree of validation to the effect that "the petitioner herein, has full, adequate and lawful right, power and authority to issue and sell Electric Revenue Certificates of the City of Jacksonville, Florida, in the total principal sum of One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000.00), the denomination and maturity, bearing the interest and payable, as set forth at length in Ordinance No. X118."

The obligation of the proposed revenue certificates is against the City of Jacksonville in its public corporate capacity as proprietor of an existing municipal electric generating and distribution system that the city is authorized, and indeed required, by law to keep and maintain in a reasonably high state of productive efficiency for the utility and benefit of the city's inhabitants, and for the accommodation of those of its customers with whom it has authority to deal in a business way.

There is neither incorporated in the certificates nor implied therein, any undertakings to mortgage or encumber the plant or system itself. Nor is there pledged thereby the taxing power of the City of Jacksonville, nor undertaken to be obligated any municipal revenues otherwise derived than from the particular existing utility system designed to be thereby rejuvenated, enlarged, extended and improved.

The practical operation and effect of the scheme of financing contemplated is the negotiation and sale of the involved negotiable obligations only upon condition that the same shall be payable solely out of the anticipated income to be derived from the city's existing utility plant and distribution system. And this is to be done only that needed

funds may be realized from such flotation to be presently invested in and added to that same system as a result of the consummation of this particular plan of funding. Such certificates are therefore not bonds within the restrictive provisions of amended Section 6 of Article IX of the State Constitution and may be lawfully issued and sold by the City of Jacksonville absent a submission of the proposition to the city's freeholder electors under said Section and Article of the Florida Constitution. See State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924; State v. City of Daytona Beach, 118 Fla. 29, 158 Sou. Rep. 300; Boykin v. Town of River Junction, 121 Fla. 902, 164 Sou. Rep. 558; Leon County v. State, 122 Fla. 505, 165 Sou. Rep. 666; Board of County Comm'rs of Pinellas County v. Herrick, 123 Fla. 619, 167 Sou. Rep. 386; Hopkins v. Baldwin, 123 Fla. 649, 167 Sou. Rep. 677; State v. City of Clearwater, 124 Fla. 354, 168 Sou. Rep. 546; Wilson v. City of Bartow, 124 Fla. 356, 168 Sou. Rep. 545; State v. City of Punta Gorda, 124 Fla. 512, 168 Sou. Rep. 835; Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 Sou. Rep. 356; Hygema v. City of Sebring, 124 Fla. 683, 169 Sou. Rep. 366; Boykin v. Town of River Junction, 124 Fla. 827, 169 Sou Rep. 492; Williams v. Town of Dunnellon, 125 Fla. 114, 169 Sou. Rep. 631; Taachy v. City of Wauchula, 125 Fla. 150, 169 Sou. Rep. 640; Voorhees v. City of Moore Haven, 125 Fla. 149, 169 Sou. Rep 641; State, ex rel. City of Vero Beach v. MacConnell, 125 Fla. 251, 169 Sou. Rep. 657; Roach v. City of Tampa, 125 Fla. 62, 169 Sou. Rep. 627; State, ex rel. City of Sarasota, v. Richards, 125 Fla. 145, 169 Sou. Rep. 643; Taylor v. City of Miami, 125 Fla. 144, 169 Sou. Rep. 644; Boynton v. City of Safety Harbor, 125 Fla. 143, 169 Sou. Rep. 644; Pente-

cost v. City of Fort Myers, 125 Fla. 152, 169. Sou. Rep.
645; State, *ex rel.* City of Arcadia, v. Daniel, 125 Fla. 151,
169 Sou. Rep. 645; Airth v. City of Live Oak, 125 Fla.
155, 169 Sou. Rep. 646; Blocker v. City of St. Petersburg,
125 Fla. 156, 169 Sou. Rep. 647; City of Clearwater v.
Green, 125 Fla. 157, 169 Sou. Rep. 647; State v. City of
St. Augustine, 125 Fla. 173, 169 Sou. Rep. 648; State v.
City of Fort Pierce, 126 Fla. 184, 170 Sou. Rep. 742; State
v. City of Plant City, 127 Fla. 495, 173 Sou. Rep. 363.

The remaining questions raised and argued upon behalf
of appellant as grounds for reversal have been deliberated
upon by the Court, but we find thereon no occasion for
additional discussion other than to say that none of them,
in our opinion, constitutes ground for setting aside or mod-
ifying the validation decree appealed from, which decree
is not only sanctioned by the constitution and statutes of
the State of Florida but obviously correct in the light of
prior decisions of this court to which reference has here-
inbefore been made. See also: Boatright v. City of Jack-
sonville, 117 Fla. 477, 158 Sou. Rep. 42; Ricker v. City
of Jacksonville, 93 Fla. 199, 111 Sou. Rep. 552. There is
nothing in the cited case of City of Jacksonville v. Ren-
froe, 102 Fla. 512, 136 Sou. Rep. 254, to militate against
the views hereinabove expressed.

It is therefore considered, adjudged and decreed by this
Court that the validation decree of the Circuit Court of
Duval County, in manner and form as entered and appealed
from be, and the same is hereby affirmed, and that man-
date in conformity with this judgment do issue within ten
days as provided for by Section 5108 C. G. L., 3298 R.
G. S., chapter 11854, Acts 1927, if no petition for rehearing
has been filed within that period.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and BU-FORD, J. J., concur.