188 So.2d 795 (1966)
STATE of Florida, Appellant,
v.
TAMPA SPORTS AUTHORITY, a Public Agency of Florida, Politic and Corporate, Appellee.
No. 35247.
Supreme Court of Florida.
July 8, 1966.
*796 Paul Antinori, Jr., State's Atty., and Nick J. Falsone, Asst. State's Atty., for appellant.
John R. Lawson, Jr., of Knight, Jones & Whitaker, Tampa, for appellee.
ROBERTS, Justice.
This is an appeal from a decree of the Circuit Court of Hillsborough County, validating $4,600,000.00 revenue bonds of the Tampa Sports Authority.
The Tampa Sports Authority was created as a public agency by Chapter 65-2307, Laws of Florida, Acts of 1965, "for the purpose of planning, developing, and maintaining a comprehensive complex of sports and recreation facilities for the use and enjoyment of the citizens of Tampa and Hillsborough County," as a public purpose. The Act provides for the issuance of revenue bonds by a pledge of all or part of revenues and other moneys legally available, providing that no bonds should be issued unless a proper study showed that the revenues of the Authority would "with reasonable probability be sufficient to repay said bonds without the use of the City and County appropriations provided in Section 8(b)" of the Act. Section 8(b) requires the city of Tampa to "appropriate and expend the annual sum of sixty thousand dollars ($60,000.00) to the authority" and requires the county of Hillsborough to "appropriate and expend the annual sum of thirty thousand dollars ($30,000.00) to the authority" for capital improvements or to otherwise carry out the purposes of the Act. This section states that, except for the first payment due on October 1, 1965, any moneys not needed for debt service would be returned to the City and County in the same ratio as contributed by either of them. Section 8(a) requires and obligates the city of Tampa to appropriate and expend the Authority the sum of seventy thousand dollars ($70,000.00) annually beginning October 1, 1965 for use by the Authority for maintenance of the facilities on the land formerly owned by the city of Tampa and conveyed to it by the Act. The funds are to be used for the payment of employee salaries, operating, planning, and other necessary expenditures.
The Act provides that "Bonds issued under the provisions of this act shall not be deemed to constitute a debt of Hillsborough County or any municipality therein or a pledge of the faith and credit of Hillsborough County or any municipality therein, and a statement to that effect shall be recited on the face of the bonds."
Pursuant to the Act, the Authority was authorized by resolution to issue revenue bonds in the amount of $4,600,000.00 and it thereafter entered into cooperation agreements with the City and County to provide for the derivation of the sums required by Section 8. The agreements, inter alia, provided that the sum required by Section 8 of the Act should be from available moneys derived from sources other than the proceeds of ad valorem taxation; that the bondholders should have no right to enforce the payment of any sums by the City or County to the Authority; that the bonds and the coupons (as shown by a form set out in the resolution) do not constitute an indebtedness or a pledge of the faith and credit of the City or County, although the bond form states that under the cooperation agreements the City and County have agreed to appropriate and pay over to the Authority in each year the sums provided by Section 8 of the Act.
By petition filed March 3, 1966, the Tampa Sports Authority sought to have validated stadium revenue bonds. The *797 States Attorney, city of Tampa and county of Hillsborough filed answers challenging the validity of the agreements and contracts and the proposed issuance of the bonds without a referendum.
The Chancellor found, inter alia, that the revenues of the Authority, together with the funds provided by Section 8(a) of the Act will, with reasonable probability, be sufficient to pay the bonds and operate and maintain the facilities without the use of the moneys provided in Section 8(b); that the cooperation agreements between the Authority and the City and County validly limited the rights of the Authority to sources other than ad valorem taxation; that the agreements are valid contracts; that Section 9 of the Act lawfully conveyed all the rights of the city of Tampa to the described land without deed or other conveyance; that a pledge by the Authority of the moneys to be received from the City and County under the agreements from sources other than ad valorem taxes does not constitute an indebtedness subject to the provisions of Section 6, Article IX of the Florida Constitution, F.S.A. and that in the event of default in any covenant for a period of thirty days, the bondholders shall be entitled to the appointment of a receiver of the facilities. The bond issue was validated.
The State alone filed assignments of error and challenged the validity of the revenue bonds on the following grounds: (1) Section 8 of Chapter 65-2307, Acts of 1965, violates Section 6, Article IX, of the Constitution of Florida, as it requires expenditure of public funds by the city of Tampa and county of Hillsborough in addition to net revenues earned by Tampa Sports Authority. (2) The cooperation agreements between the Authority and the City and County which provide for the appropriation and expenditure of funds from sources other than ad valorem taxes are invalid as constituting an indebtedness without compliance with Section 6, Article IX. (3) That Section 9, Chapter 65-2307, Laws of Florida 1965, does not authorize the transfer of title from a municipality to the Authority without deed, compensation or a limitation of use. (4) The evidence does not support a reasonable probability of repayment of the bond issue without the use of prohibited money.
We must decide whether the pledge of moneys by the City and County to the Authority under Chapter 65-2307, Special Acts of Florida, violates Section 6, Article IX of the Constitution of Florida. We have examined the Act in its entirety and have particularly noted the provision that revenue bonds are to be secured by a "pledge of all or any portion of the revenues and/or other monies legally available therefor". We have reviewed the bond resolution and the cooperation agreements between the City and County and the Authority, and have examined the form of the bonds themselves which specifically state that the payments from the City and the County will be "from sources other than ad valorem taxes". We conclude that the bond issue here proposed complies with the requirements of the Act, the remedies of bondholders are not against the ad valorem taxing power of the City or County, and therefore does not require a referendum of the freeholders. Compare Hopkins v. Baldwin (1936), 123 Fla. 649, 167 So. 677. In State v. City of Jacksonville (1951), 53 So.2d 306, this court said:
"We have repeatedly held that when certificates of indebtedness are for an authorized public purpose and are payable solely from revenues derived from utilities service, excise taxes, licenses or some other source than ad valorem taxes, they may be issued without an approving vote of the freeholders as required by Section 6, Article IX of the Constitution."
And in Town of Medley v. State (1964), 162 So.2d 257 said:
"The incidental effect on use of the ad valorem taxing power occasioned by the pledging of other sources of revenue does not subject such bonds or certificates to *798 that [Sec. 6, Art. IX] constitutional requirement."
See also decisions by this court in Bessemer Properties, Inc. v. City of Miami, 41 So.2d 551; Leon County v. State, 122 Fla. 505, 165 So. 666; Tapers v. Pichard, 124 Fla. 549, 169 So. 39; City of Jacksonville v. Nichols Engineering & Research Corp., 159 Fla. 729, 32 So.2d 586.
There is no question raised in the instant case as to the public purpose of the proposed recreational and sports facilities, and all stadium bondholders are on notice that repayment is not secured by revenue derived from ad valorem taxation.
Appellant attacks the conveyance by the Special Act of city property to the Authority without deed of conveyance or compensation. The property involved was known as Al Lopes Field and was owned by the City and used as a recreational park, especially as a facility for baseball games. The use of the property by the Authority is also for recreational and sports purposes and in both instances it is held for the use and benefit of the public. Our examination of the Act and the arguments advanced lead us to the conclusion that this court many years ago construed Section 8 of Article VIII of the Florida Constitution as vesting absolute legislative control over municipalities. No restraints have been found elsewhere in the Constitution so it appears that the Legislature had full authority to transfer the described property from one creature of the Legislature to another without formal deed or compensation.
We have examined the other contentions of appellant and find them without merit.
Accordingly, the decree of validation of the trial judge is affirmed and the proposed revenue certificates are validated.
It is so ordered.
THORNAL, C.J., and DREW and ERVIN, JJ., concur.
CALDWELL, J., agrees to judgment.