53 So.2d 828 (1951)
TOWN OF RIVIERA BEACH
v.
STATE et al.
Supreme Court of Florida, Division B.
July 31, 1951.
Rehearing Denied August 25, 1951.
*829 Drew, Burns, Middleton & Rodgers, E. Harris Drew and Elwyn L. Middleton, all of West Palm Beach, for appellant.
Phil D. O'Connell, West Palm Beach, for State.
C.D. Blackwell, West Palm Beach, for H.A. Hanlon, intervenor.
CHAPMAN, Justice.
The town of Riviera Beach, Florida, now owns, operates and maintains, and for several years past has owned, maintained and operated, a municipal water supply system by which water is provided and distributed to the town and its inhabitants. The town has heretofore issued its water revenue certificates and the proceeds thereof used by the town in the construction and maintenance of the present system and there remains outstanding and unpaid at the present time revenue bonds previously issued in the principal amount of $122,000.00, with interest thereon.
Pursuant to the provisions of Chapter 24851, Special Acts of 1947, Laws of Florida, the town council of Riviera Beach, on March 22, 1951, adopted a resolution authorizing the issuance of $995,000.00 water revenue bonds, the proceeds of which are to be used in the extension, expansion and perfection of a more serviceable water supply system in behalf of the town of Riviera Beach and its inhabitants. The inadequate supply of water at the present time threatens the health and welfare of the people of the town and is not sufficient to fully protect property situated within the incorporate limits of the town from fire hazards.
The proceeds of the $995,000.00 water revenue bonds are to be used viz.: (1) a portion thereof is to be used to refund the present outstanding issue of water revenue certificates; (2) the sum of $35,000.00 is to be used in the acquisition of a water system installed in subdivisions situated in the town as developed by Charles and Lewis properties the cost of which was advanced the town by Charles; also by Lewis a Mission Company; (3) the sum of $400,000.00 is to be used in acquiring a water system owned by Palm Beach Shores, a municipal corporation which is supplying water to part of the inhabitants residing in the town of Riviera Beach; and (4) the remaining amount of the $995,000.00 water revenue bond issue is to be used in the construction, expansion and improvement of the town's water system, inclusive of the purchase from the Charles and Lewis properties and Palm Beach Shores.
The resolution recites that the revenues arising from the operation of the water system of the town of Riviera Beach, after the acquisition of the two systems, supra, coupled with the extensions and improvements made on the whole water system, will be sufficient in amount to pay off the principal and interest as the same shall become due, and all costs of operation and maintenance by the town of Riviera Beach of its water system. The revenue from its water system will pay on maturity the semi-annual installments of interest and bonds according to the schedule of maturity from 1957 until 1981. The water revenue bonds so issued pursuant to the resolution shall not constitute a lien upon any of the property of the town, neither do they in any form pledge the taxing power of the town of Riviera Beach to levy on any real estate or personal property within the town to pay either the principal or interest due or becoming due on the water revenue bonds.
The necessity for a greater supply of wholesome water to be supplied by the town of Riviera Beach to its inhabitants through its proposed integrated system is *830 not challenged on this record, it is contended however that the town does not have the legal power and authority to issue the water revenue bonds and pledge its net revenues to accomplish the desired end. The objections to the validation of the certificates, more or less, go to the question of the financial soundness of the proposed certificates or other economic reasons. Regardless of arguments presented by the respective parties, the simple fact remains that the inhabitants of the town of Riviera Beach are now in daily need of an adequate supply of wholesome water. The town filed its petition in the Court below praying for a validation of the water revenue certificates, when all parties were made defendants, and the proceedings were in all respects regular and in conformity with applicable statutes. A taxpayer intervened and filed an appropriate pleading, testimony was taken and on final hearing the Chancellor dismissed the cause. The town of Riviera appealed.
Counsel for appellant contend that the Chancellor erred in entering his order dismissing the petition on final hearing and refusing to validate the proposed water revenue bonds of the town of Riviera Beach. Counsel for appellees contend that the following pertinent facts presented to the Chancellor on final hearing are sufficient, under Farrington v. Harrison, 95 Fla. 769, 116 So. 497, to affirm the ruling in the Court below:
"1. The evidence does not demonstrate that the water revenue pledged for the payment of the bonds will be sufficient; and hence a default will be immediate and a receiver appointed.
"2. The present Water System had net operating income of $17,165.00 for 1949 and $15,156.00 for 1950.
"3. The Town of Riviera Beach has now outstanding $122,000 or 3 3/4% certificates payable from the water revenue.
"4. The town now proposes to issue $995,000 of 4% certificates payable from the water revenue. This means that the interest alone will be approximately $45,000 a year to be paid from the water revenue which was only $15,156 for the year 1950. As soon as the bonds are issued a default will be imminent and immediate; and hence with the appointment of a receiver as the necessary result.
"5. The terms and conditions under which the Town is to acquire or to operate the Palm Beach Shores system for the inhabitants of the Town of Palm Beach Shores are not disclosed. Keep in mind that this property is within the corporate limits of another and distinct municipal corporation and will be bound by such terms and conditions as the Town of Palm Beach Shores sees fit to place upon it.
"6. The Town of Riviera Beach may fix the rates provided they are reasonable within its own borders; but it has no power to fix rates for water users in another district municipality. The Town of Palm Beach Shores may fix such rates that will be prohibitive, with the result that the Town of Riviera Beach will lose money, and will ultimately lose its water system. Unless we know the terms and conditions on which the Town of Riviera Beach is to acquire the Palm Beach Shores System, we will not be able to determine what will be the income from that system."
The point is made that the town of Riviera Beach does not have the legal authority to issue the water revenue bonds and with part of the proceeds purchase the Palm Beach Shores water system, as is here contemplated. It appears by the record that The Palm Beach Shores water system is now situated in the town of Palm Beach Shores and a portion thereof in the town of Riviera Beach. It is being used to serve customers in the two towns. The purchase and sale to Riviera Beach of the Palm Beach Shores water system had been considered by the parties in interest. Broad powers are conferred on municipalities by the general laws applicable to all municipalities of Florida, and matters especially affecting the health, general welfare and protection of property with an adequate water system are functions of municipalities. Section 14, of Chapter 24851 incorporates the laws applicable to all municipalities. It is our conclusion that the town of Riviera Beach, under Chapter 24851, supra, and the general laws applicable to *831 municipalities, has sufficient power to acquire the Palm Beach Shores water system. See State v. City of St. Petersburg, 145 Fla. 206, 198 So 837; also Chapters 167 and 180, F.S.A.; State ex rel. Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 So. 358, 19 L.R.A.,N.S., 183.
The decree of validation in the Court below was denied for reasons viz.: (1) It was not shown that the water revenue certificate will be sufficient in amount to pay the interest and bonds as they mature; (2) the covenant to pay $75.00 per annum for fire hydrants is a pledge on the future taxing power; (3) the covenant to increase the water rate is a pledge of the future taxing power; (4) the evidence adduced was legally insufficient to support a decree of validation. Our Legislature, pursuant to Section 8 of Article 8 of the Constitution of Florida, F.S.A., enacted Chapter 24851, Special Acts of 1947, Laws of Florida. Section 14 thereof provided that: "The powers conferred by this Act (24851) shall be in addition and supplemental to the powers conferred by any other law * * *." See Chapter 167 and 180, F.S.A. A municipality, therefore, possesses legislative powers which it may exercise in a sovereign capacity; also a proprietary power which it may exercise for the private advantage of the inhabitants or for the private advantage of the municipality. This power is usually conferred on the town council by the terms of the charter. Courts cannot interfere with reasonable discretion exercised by a town council in the management of one of its utilities. Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 220; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300.
Judicial interference with the exercise of discretionary powers of municipal officials is treated in Volume 2 (3rd Ed.) of McQuillin on Municipal Corporations, par. 10.33. The previous holdings of this Court on the point at issue are in harmony with the rule, which is as follows:
"10.33. Judicial Interference With Exercise of Discretionary Powers.
"Whether the exercise, or refusal to exercise, by a municipal corporation, of a power conferred on it expressly or by implication, is subject to control by the courts, ordinarily depends on whether the power is discretionary or mandatory. Whether exercise of a particular power is discretionary or mandatory has been considered in a preceding section.
"Assuming that the municipal authorities have acted within the orbit of their lawful authority, no principle of law is better established than that courts will not sit in review of proceedings of municipal officers and departments involving legislative discretion, in the absence of bad faith, fraud, arbitrary action or abuse of power. The rule has been stated as follows: `Where the law or charter confer upon the city council, or local legislature, power to determine upon the expediency or necessity of measures relating to local government, their judgment upon the matters thus committed to them while acting within the scope of their authority cannot be controlled by the courts.' Where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused, nor inquire into the propriety, economy and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. A court cannot substitute its judgment for that of the municipal authorities if there is room for debate. Another statement of the rule is as follows: `With the exercise of discretionary powers, courts rarely, and only for grave reasons, interfere. These grave reasons are found only where fraud, corruption, improper motives or influence, plain disregard of duty, gross abuse of power or violation of law, enter into and characterize the result. Difference in opinion or judgment is never a sufficient ground for interference.' If the result of the given action, as the letting of a contract for an improvement, the construction and operation of a particular utility or the enactment of a certain ordinance, is an economic mistake, a municipal extravagance, and an improper burden upon the taxpayers, as so often urged in contests of this nature, the prevailing answer of the courts is that the remedy, if any exists, is at the *832 ballot box, rather than by injunction or other court proceeding. It may be stated broadly that this immunity from judicial control embraces the exercise of all municipal powers, whether legislative or administrative, which are strictly discretionary."
Also in Volume 12 (3rd Ed.) par. 35.27, page 638, McQuillin on Municipal Corporations, the following rule is stated:
"In the management and operation of its plant, a `city is not exercising its governmental or legislative powers, but its business powers, and may conduct it in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city council; and it is not within the province of the court to interfere with the reasonable discretion of the council in such matters.' So where a municipality owns a water or light plant or other public utility, the question of the extension of the system is within the sound discretion of the authorities of the municipality."
See 62 C.J.S., Municipal Corporations, § 199, p. 373; 37 Am.Jur. page 824.
The order appealed from is reversed with directions to enter an appropriate decree of validation according to the prayer of the petition.
SEBRING, C.J., and ADAMS and ROBERTS, JJ., concur.