112 So.2d 898 (1959)
BROWARD COUNTY RUBBISH CONTRACTORS ASSOCIATION et al., Appellants,
v.
BROWARD COUNTY, a political subdivision of the State of Florida, J. Herbert Burke, As Chairman and member of the Board of County Commissioners, et al.; Affiliated Services, Inc., et al., Appellees.
No. 1025.
District Court of Appeal of Florida. Second District.
April 1, 1959.
Rehearing Denied June 19, 1959.
*899 Walden & Ryan, Dania, Joseph A. Fitzsimmons, Ft. Lauderdale, for appellants.
John U. Lloyd, Joseph Easthope, J.T. Chancey, McCune, Hiaasen, Kelley & Crum, Carl A. Hiaasen, Ft. Lauderdale, Raymond E. Barnes, Barnes & Inman, Orlando, for appellees.
ALLEN, Acting Chief Judge.
Five separate appeals have been taken in this case from interlocutory orders entered in the court below. Four of the appeals have been dismissed and this case is now before this court on an interlocutory appeal in case No. 1025, which brings to us for review five orders entered below.
This court has had to check the records, briefs, and appendices in five cases, the original testimony plus exhibits, of thousands of pages in order to secure the information necessary to determine the questions involved in this appeal. Were it not for the public nature of the subject matter of this suit, we would have dismissed the appeal for failure to comply with the rules of appellate practice of this State.
The subject matter of this appeal was initiated by an action filed in Broward County by Affiliated Services, Inc. against Broward County seeking a declaratory decree as to the validity of a contract that had been entered into between the plaintiff and Broward County. Subsequently, a suit was brought by Broward County Rubbish Contractors Association, a non-profit corporation, joined by several of its members holding garbage collection and disposal franchises and also joined by five citizens and residents of the unincorporated area of Broward County, Florida, against Broward County, the Board of County Commissioners of said County, Affiliated Services, Inc. and Continental Enterprises, Inc., a Delaware corporation, for a declaratory decree cancelling the exclusive garbage, waste and trash collection franchise granted Affiliated Services, Inc. by the County Commissioners of Broward County and for a temporary and permanent injunction against the defendants with reference to the garbage contract involved.
The lower court heard a large number of witnesses, which resulted in approximately 700 pages of testimony on two principal issues, to-wit: whether temporary injunction should issue against Affiliated Services, Inc. to prevent them from proceeding under a franchise to collect garbage, which franchise became effective October 1, 1958; and whether a temporary injunction should be issued against the Broward County Rubbish Contractors Association and the members individually to prevent them from making garbage collections after October 1, 1958. The trial judge refused to issue an injunction against Affiliated Services, Inc., hereinafter called "Affiliated," and subsequently issued a temporary injunction against the Broward County Rubbish Contractors Association, hereinafter called "the Association," and its members, which latter injunction was superseded by the posting of a bond.
Motions for summary decree on the part of the appellants, as well as other motions, appear in the file, but there is nothing in the records, as far as we have been able to find in any of the files, to show that there has ever been a hearing or ruling on these motions. The appellants, in their brief, state the following five points involved:
1. Did the chancellor err in interlocutory orders dated September 26 *900 and 30, 1958 by failing to consider that the Board of County Commissioners of Broward County grossly abused their discretion and showed favoritism toward Continental Enterprises Inc., and Affiliated Services, Inc., and dealt unfairly with appellants by rejecting the bid or proposal of Broward County Rubbish Contractors Association which was the lowest and best bid submitted by an experienced bidder, and would furnish sanitary land fill disposal for next five years without increase in rate to citizens of Broward County as users of county garbage collection and disposal service; and said board ignored appellants' long satisfactory collection service and large investment required by board in packer type sanitation trucks?
2. Did the Board of County Commissioners exceed their authority under Chapter 27434, Special Acts of 1951, and Chapter 30617, Special Acts of 1955, by entering into an exclusive garbage, waste and trash franchise agreement for 25 years; delegating rate-making powers to arbiters; agreeing to make gift of public lands rent and tax free for 25 years for the exclusive use and benefit of a private corporation for profit for dump and incinerator sites; and agreeing to purchase incinerator in event of financial difficulties of said private corporation?
3. Did chancellor err and grossly abuse his discretion in orders of September 26 and 30, 1958, by prejudging the cause on preliminary hearing, by denying stay and to set supersedeas bond, and by terminating temporary injunction, and thereby approving 5 to 25 year garbage franchise agreement which increased the cost to users of collection and disposal service by $2,000,000.00 to $20,000,000.00 for certain, and with proviso for further annual rate increases but no provision for any decrease in rates to be charged for garbage service?
4. Did the chancellor err in the order of October 9, 1958, by directing the tax collector to restrict appellants' state and county licenses to collect and dispose of garbage to within the corporate limits of the municipalities contracting for appellants' services?
5. Did chancellor err in orders dated November 19 and 21, 1958, by defining household trash and refuse as garbage and enjoining appellants holding trash and refuse occupational licenses from collecting, hauling, and disposing of household trash and refuse and thereby preventing appellants from competing with Affiliated Services, Inc., which does not hold any exclusive franchise to collect and dispose of waste and trash; and was the amount of supersedeas bond excessive?
From a study of the record and briefs, we are under the impression that the points involved as to set out by the appellants in their brief, and as hereinabove stated in this opinion, do not correctly reflect the questions involved on this interlocutory appeal.
We think the questions involved, succinctly stated, are as follows:
Whether the court erred, after the taking of testimony, in refusing to issue a temporary injunction against Affiliated Services, Inc. to prevent them from proceeding under a franchise to collect garbage and whether a temporary injunction should have been issued against the Broward County Rubbish Contractors Association, and the members thereof, to prevent them from making garbage collections after October 1, 1958. The trial judge refused to issue a temporary injunction against Affiliated and issued a temporary injunction against the Association which latter injunction has been superseded by the posting of a bond.
Whether the lower court was correct in defining "garbage" to include household *901 trash and refuse as stated in appellants' point 5.
The record discloses that Broward County, due to its tremendous growth in recent years in non-urban areas, was afflicted with a tremendous garbage disposal problem. A special act of the legislature was enacted in 1951 (Chapter 27434, Laws of Florida, 1951) which empowered the Board of County Commissioners of Broward County to establish and operate, directly or indirectly, garbage collection and disposal services within Broward County in areas which were not included in the corporate limits of any city, and empowering the board to charge and collect fees to defray costs and expenses of such service. Acting under this Act, the commissioners licensed quite a number of individual operators for garbage collection and disposal services in connection therewith.
In 1955, Chapter 27434, supra, was amended by Chapter 30617, Special Acts of 1955, authorizing the Board of County Commissioners, within its discretion, to establish, maintain and operate garbage collection and disposal services, either directly or indirectly, and within its discretion, to delegate its authority to collect and dispose of garbage, including the authority to collect fees from the users of garbage collection and disposal services from any individual or corporation. It further provided that the Board could grant franchises, either exclusive or non-exclusive, upon such terms and conditions as the Board should determine.
Subsequent to the enactment of Chapter 30617, Laws of Florida, 1955, the Board of County Commissioners entered into an exclusive contract with Affiliated Services, Inc., to collect garbage within the areas of Broward County, excluding incorporated areas. The contract was rather long and, roughly, provided as follows: An exclusive franchise was granted to Affiliated for the collection and disposal of garbage and waste; Affiliated was required to provide a fleet of modern, packer type, sanitary equipment; sanitary, fill, dump sites were required to be operated by Affiliated; the franchise was to extend for five years; fees were provided for trash and garbage collections, and rate increases were authorized under certain conditions; and an annual franchise fee of $18,000.00 was required to be paid by Affiliated during a five year period. One paragraph of the contract provided that Broward County would seek legislative authority to extend the power to grant a franchise for 25 years, and if such legislation became effective, the contract already entered into would be automatically extended for such period of time. Affiliated would then have been required to construct an incinerator or incinerators on sites to be furnished by the County, and at the end of the 25 years, the County would have taken over the operation of the incinerators which were to be free and clear of any other claims.
The appellants vigorously question the validity of the extension of the contract for 25 years. We do not consider this question as involved in the present appeal. In the first place, this franchise is for five years, and before it could be extended, the Legislature of Florida would have to authorize, by a specific act, such authority. So, we shall not further allude, in this opinion to this feature of appellants' argument.
The contract between Affiliated and the County Commissioners of Broward County does not define garbage, waste or trash, and appellants attack the definition of the word "garbage," as given by the lower court, primarily because the individual appellants sought to continue to pick up trash on the premises of various parties as they had done in the past under the theory that garbage, in its narrowest sense, was all that was involved in the exclusive contract in this suit. The lower court held that the word "garbage" included garbage, waste, rubbish and trash. This was based on the definitions of such words and the "custom of the trade," as the appellants were acting under the individual garbage franchise, *902 which expired on September 30, 1958, defining "garbage" as including garbage, waste, rubbish and trash. It was also noted that in the sworn complaint of the plaintiffs below, appellants here, they referred several times to their franchise, which was limited to "garbage," as authorizing them to collect and dispose of garbage, waste, rubbish and trash.
The judge, in his order on the application for a temporary injunction, wrote a very able opinion on the various questions involved in this appeal, from which we shall quote liberally:
"Turning to other positions of the plaintiffs, it was further argued by them that there was no authority in the above acts to grant a single exclusive franchise for all of the unincorporated area of the county. The acts of the legislature do not require, but permit, the commissioners to divide the county into districts; nor does an examination of the acts reveal that the commissioners are required to grant more than one franchise.
"Also argued by the plaintiffs was the contention that the contract attempted to make a gift of dump sites to the exclusive franchise holder, Affiliated, contrary to section 125.35, Florida Statutes [F.S.A.], which authorizes sale and conveyance of real property, belonging to the county, only after advertising for bids. The court, however, is unable to ascertain from the agreement that the county has made such a gift; on the other hand, it provides that storage and maintenance facilities for equipment are to be maintained on land owned or leased by Affiliated; Affiliated is required at its own expense, to provide areas for disposal of garbage and waste; the cost and expense of operating said disposal areas shall be borne and paid for by Affiliated; and, if the term of the agreement with Affiliated is extended by the legislature, the county shall provide, without expense to Affiliated, an incinerator site and, while such site shall be furnished without expense or rent and tax free, it shall be continued to be owned by the county. It is further provided that incinerator plants shall be constructed without cost to the county and, at the end of a twenty-five year extended period, if the legislature grants such extension, the plants shall become the property of the county. A franchise fee of $18,000 was required under the agreement, and has been paid.
"It was next contended by the plaintiffs that the county, being authorized under the 1951 act to expend $10,000 annually for the purpose of paying a portion of the cost and expenses necessary for the establishment, maintenance and operation of garbage collection and disposal services, such contract involving the collection and disposal of garbage comes within section 125.08, Florida Statutes [F.S.A.], requiring certain contracts to be let only on competitive bidding. An inspection of the section shows it to apply only to contracts for 1) the working of any road or street; 2) the construction or building of any bridge; 3) the erecting or building of any house; and 4) the purchase of any goods, supplies or materials for county purposes or use. It is difficult to perceive the application of this section to a franchise to collect, remove and dispose of garbage and waste. Furthermore, the agreement does not involve the expenditure of tax funds.
"* * * Obviously, when the legislature provided throughout the two acts for `garbage collection and disposal services,' and were empowered to collect fees from users of such services to defray the cost necessary for the establishment, maintenance and operation of such collection and services, to purchase, rent or lease necessary equipment, facilities and lands, and to *903 enter into certain contracts with other municipalties, the legislative body intended the word `garbage' to have more than a limited meaning of table scraps and food remnants. In addition, other courts have decided that the term `garbage' includes `waste.' Words and Phrases, `Garbage,' Volume 18. It is also noted that the plaintiffs allege in their complaint that members of their Association presently hold franchises to collect and dispose of `garbage, waste, rubbish and trash,' and have collected and disposed of same; that in their proposal to the board they agreed to purchase land for a disposal area and dispose of `garbage, waste, rubbish and trash,' thus indicating that the plaintiffs, operating under the two acts, have heretofore construed the word `garbage' to include `garbage, waste, rubbish and trash.' It is further observed that the franchise agreement is only permissive as to `trash.'
"* * * * * *
"The court is not unsympathetic and is fully aware of the consequences of and the effect the adoption of such a contract, as is litigated in this cause, by the board of county commissioners will have upon the franchise holders whose franchises expire September 30, 1958, and the dissatisfaction that it will produce in some of the users of the present franchise holders, but the court cannot say, from the evidence thus far produced, that the action complained of is illegal, fraudulent, a gross abuse of discretion, or so clearly oppressive as to permit the court to issue a temporary restraining order, other than the one above, occasioned by an unauthorized party to the contract. The board was acting within its discretion in considering the agreement, and the fact that plaintiffs were opposed to the action does not justify this court's interference. The wisdom or policy of official action may not be a predicate for an injunction when the action taken does not involve illegality or a palpable abuse of authority amounting to illegality. As stated in one of the above authorities, a difference or variance in opinion or judgment is never a sufficient ground for interference by the court."
A good deal of argument in the brief of appellants is devoted to the economy of the contract and to the effect such a contract will have on appellants. This is a matter that the Board of County Commissioners were authorized to determine for themselves. The lower court correctly held that a court cannot invade the administrative duties of the Commissioners, it can only determine whether the action was illegal vel non.
Where a public body is exercising discretionary powers within the orbit of laws affecting them, courts will not assume jurisdiction or exercise power to interfere with such public bodies. Courts will not determine whether or not the action of public officers is wise, economical or advantageous, such questions belonging exclusively to the public officers and boards. If they exercise their powers foolishly or unwisely, the recourse of their constituents is to the ballot box and not to the courts. The rule is stated in 17 Fla.Jur., Injunctions § 52, as follows:
"Equity will not ordinarily assume jurisdiction to prevent public officials or servants from doing their duty as required by law, or performing lawful acts that are not in excess of their authority. In the absence of fraud or gross abuse of discretion, equity will not interfere with or restrain public officers or agencies in the exercise of power vested in them, and will not attempt by injunction to substitute its own discretion for that of such officials in matters belonging to their proper jurisdiction. In other words, the injunctive remedy cannot normally be invoked to control the action of public *904 officers. This rule extends to determinations of quasi-judicial tribunals, such as supervisory boards and commissions, the proper and usual remedy in such cases being the writ of certiorari."
Recently, the Supreme Court of Florida, in the case of Town of Riviera Beach v. State, Fla. 1951, 53 So.2d 828, 831, said:
"`Whether the exercise, or refusal to exercise, by a municipal corporation, of a power conferred on it expressly or by implication, is subject to control by the courts, ordinarily depends on whether the power is discretionary or mandatory. Whether exercise of a particular power is discretionary or mandatory has been considered in a preceding section.
"`Assuming that the municipal authorities have acted within the orbit of their lawful authority, no principal of law is better established than that courts will not sit in review of proceedings of municipal officers and departments involving legislative discretion, in the absence of bad faith, fraud, arbitrary action or abuse of power. The rule has been stated as follows: "Where the law or charter confer upon the city council, or local legislature, power to determine upon the expediency or necessity of measures relating to local government, their judgment upon the matters thus committed to them while acting within the scope of their authority cannot be controlled by the courts." Where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused, nor inquire into the propriety, economy and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. A court cannot substitute its judgment for that of the municipal authorities if there is room for debate. Another statement of the rule is as follows: "With the exercise of discretionary powers, courts rarely, and only for grave reasons, interfere. These grave reasons are found only where fraud, corruption, improper motives or influence, plain disregard of duty, gross abuse of power or violation of law, enter into and characterize the result. Difference in opinion or judgment is never a sufficient ground for interference." If the result of the given action, as the letting of a contract for an improvement, the construction and operation of a particular utility or the enactment of a certain ordinance, is an economic mistake, a municipal extravagance, and an improper burden upon the taxpayers, as so often urged in contests of this nature, the prevailing answer of the courts is that the remedy, if any exists, is at the ballot box, rather than by injunction or other court proceeding. It may be stated broadly that this immunity from judicial control embraces the exercise of all municipal powers, whether legislative or administrative, which are strictly discretionary.'"
On the authority above cited, we find no error in the decision of the lower court in the granting, as to Affiliated, or refusing to grant, as to the Association, the restraining orders herein complained of. We further find no error in the lower court on the other orders herein sought to be reviewed.
Affirmed.
O'CONNELL, STEPHEN C., and PATTERSON, TERRY B., Associate Judges, concur.