WALDEN, Chief Judge.
This is an interlocutory appeal from a chancery order which denied defendants’ motions to dismiss plaintiffs’ complaint
Plaintiffs are six individuals. Defendants are the Housing Authority of the City of Melbourne, the City of Melbourne and its Commissioners. The complaint prayed for an injunction prohibiting the erection of a low-rent housing project. It was based upon the alleged invalidity of a certain zoning ordinance and a certain cooperation agreement.
In 1963 the City of Melbourne and the Housing Authority entered into a written cooperation agreement for the purpose of facilitating the erection of a low-rent housing project in the city. It provided, inter alia:
“2. The Local Authority shall endeavor (a) to secure a contract or contracts with the PHA [Public Housing Administration] for loans and annual contributions covering one or more Projects comprising approximately 250 units of low-rent housing and (b) to develop and administer such Project or Projects, each of which shall be located within the corporate limits of the Municipality. * * *
“* * *
“5. During the period commencing with the date of the acquisition of any part of the site or sites of any Project and continuing so long as either * * * (i) such Project is owned by a public body or governmental agency and is used for low-rent housing purposes, or (ii) any contract between the Local Authority and the PHA [Public Housing Administration] for loans or annual contributions, or both, in connection with such Project remains in force and effect, or (iii) any bonds issued in connection with such Project or any monies due to the PHA in connection with such Project remain unpaid, whichever period is the longest, the Municipality without cost or charge * * shall:
* *
“(c) Insofar as the Municipality may lawfully do so, (i) * * * (ii) make such changes in any zoning of the site and surrounding territory of such Project, as are reasonable and necessary for the development and protection of such Project and surrounding territory;” (Emphasis added.)
«* * *
“(e) Cooperate with the Local Authority by such other lawful action or ways as the Municipality and the Local Authority may find necessary in connection with the development and administration of such Project.
“ * * *
“9. So long as any contract between the Local Authority and the PHA [Public *491 Housing' Administration] for loans * * or any monies due to the PHA in connection with any Project remain unpaid, this Agreement shall not he abrogated, changed, or modified without the consent of the PHA. * * * ”
Time passed with the Housing Authority pursuing the contract goal and obtaining loans from the Public Housing Administration with which it acquired project property known as Booker Heights. However, despite the contract provisions the city refused to rezone this property so as to permit the construction of low-rent housing. The undertaking being at a stand still, the Public Housing Administration wrote a letter[1] to the city, wherein it reminded the city of its obligations under the contract. It concluded that it would not commit itself to assist the city further unless the city either performed its contract obligation or repaid the sums thus far advanced.
The city then rezoned Booker Heights from W-1 and R-1 to R-3 which new classification permits the low-rent housing Thereupon, the instant suit was filed'even though it does not appear that plaintiffs or, for that matter, any person ever objected: at any of the several public hearings or attempted to obtain any administrative remedy as concerns either the zoning change or the contract.
*492 Using these beginning complaint siftings we encounter some major deficiencies which are of such nature as to require us to reverse because of the failure of the corn-. plaint to state a cause of action.
a. Plaiiitiffs' standing to sue.
~P~aintiffs nakedly claim a dual standing to bring this suit. They sue as taxpayers and as surrounding property owners. Treating the claimed "taxpayer" status first, the general rule is that taxpayers may maintain suits in behalf of themselves and other taxpayers to prevent illegal acts of tax receiving bodies that will increase the burden of taxation, either through the illegal creation of debts, the wrongful use of public property, or the wrongfuf~jexpendi-ture of public or trust fundsY 32 Fla.Jur., Taxpayers Actions, §§ 8, 19 ànd 28.
Without unduly laboring the matter, plaintiffs have failed to show either that defendants are engaged in illegal acts as hereinafter discussed or that their acts will~ increase plaintiffs' burden of taxation. See Ashe v. City of Boca Raton, Fla.App.1961, 133 So.2d 122. As to increase in taxation, it is noted that the monies here involved are federal funds loaned to the Housing Authority and as such are not subject to taxpayer attack, short of a showing of special and uncommon damage. Hogg v. Housing Authority of City of Rome, 1939, 189 Ga. 164, 5 S.E.2d 431; Matthaei v. Housing Authority of Baltimore City, 1939, 177 Md. 506, 9 A.2d 835.
L~Loolcing next at the claimed stat~is of "surrounding property owners," ~1~e~e~is'no mention of such relationship made until paragtaph 20 on page 7 of the complaint. There~aintiffs complain that no notice was given to plaintiffs of the Housing Authority's intention to erect "low rent housing on said property [Boolcer Heights] adjoining and surrounding their residences" at the time the cooperation agreement was made and the pr~perty purchased. In paragraph 23 there is a bare allegation that a residence of one of the plaintiffs will be surrounded by the low-rent housing. Finally, we note in paragraph 25 the corilusThn that plaintiffs "will suff~r-4fieparab1e injuries and damages".
f~~hi1e it is not proper for plaintiffs to plead evidence, it is necessary that they plead with some specificity using ultimate facts to show the relationship of plaintiffs' property to Booker Heights and just how they will be adverel affected by the zon-jug ordinance. Josephon v. Autrey, Fla. 1957, 96 So.2d 784; Hartnett v. Austin, Fla. 1956; 93 So.2d 86; 101 C.J.S. Zoning §§ 321, 357. In the instant case we are not apprises to how and to what degree plaintiffs will be adversely affected, if at all. Thus, the complaint is insufficient because it does not appear that plaintiffs have standing in either capacity to complain of defendants' actions.
b. City's motive iii e~iacting the rezo1~ing ordi~iaiwe for Booker Heights.
Plaintiffs, in a wordy main ass~ult, say that this ordinance should be nul-li~ied because it was the fruit of threats and d~iress directed to the city commissioners as éontained in the letter from the Public Housing Administration (n. 1). This position is the gravamen of their complaint and is not sustainable. A good zoning ordinance may be the product of questionable or poor motives. By perhaps the same token, a highly unreasonable and arbitrary enactment may be inspired by legitimate motives. Thus, a general rule has emerged which stands as a fatal bar to plaintiffs' effort. It is that the motives of a governing body of a municipal corporation in adopting an ordinance legislative in character will not be the subject of judicial inquiry. The complaint contains no recognizable criteria whereby a court could conclude that the application of this ordinance to plaintiffs' property was either unreasonable, confiscatory or unconstitutional. Courts are concerned with the product of discriminatory action by the public officials regardless of motive. See City of Miami Beach v. *493 Schauer, Fla.App.1958, 104 So.2d 129; Board of Com’rs of State Inst. v. Tallahassee B. & T. Co., Fla.1958, 108 So.2d 74; 71 A.L.R.2d 568; Standard Oil Co. v. City of Tallahassee, 5 C.A. 1950, 183 F.2d 410.
c. The cooperation agreement.
Plaintiffs attack the validity of this agreement saying that it is unconstitutional, illegal and invalid as constituting an unlawful delegation”of the police power of the municipality. Plaintiffs say that the police power being delegated! is the power to zone, and they cite the cases of Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, supra, and Hartnett v. Austin, supra, in support of their position. Indeed, these cases appear to set forth as a matter of fact that the municipality with whom they were concerned had contracted away the exercise of the municipality’s police power; namely, the power to zone, and this was condemned as a matter of law. We entirely agree with this proposition, ^Elowever,’’as-a basic dis-tinguishm,ent we see-in-the-ease sub judice-that the ‘city never actually delegated any zoning power or agreed to any improper zoning action. To the contrary, we see with reference to paragraph 5(c) of the cooperation agreement, supra, that the city contracted to act only so far as it might lawfully do so and only to make such zoning changes as would be reasonable and necessary for the development and protection of the project and surrounding territory. This appears to us to be simply a restatement of pre-existent criteria and obligations. There isjno proviso in the contract that could be construed as a delegation or abdication of zoning power, and we fail to see any proviso that could be considered as inimical or a diminution of plaintiffs’ rights in zoning. The complaint does not allege by way of ultimate fact that the zoning change was outside of the city’s lawful authority or that it was not reasonable and necessary.
Having dealt with the specific point, we observe that cooperation agreements are not new to our state. They are authorized by F.S.A. ch. 422, which was enacted in 1937. They have since been recognized in the cases of Barnes v. City of Miami, Fla.1950, 47 So.2d 3; Lott v. City of Orlando, 1940, 142 Fla. 338, 196 So. 313; Marvin v. Housing Authority of Jacksonville, 1938, 133 Fla. 590, 183 So. 145. Taking all material and sufficient allegations as true, there is no basis whereby the court could strike down the cooperation agreement.
Having discussed the critical faults, we hold that the complaint failed to state a cause of action. The order appealed is reversed with instructions to permit plaintiffs to replead if they are so advised.
Reversed.
ANDREWS, J., and LILES, WOODIE A., Associate Judge, concur.

. “Dear Mayor Friedland:
“On April 8, 1962, the Commissioners of the City of Melbourne approved an application to be submitted by the Melbourne Housing Authority to the Public Housing Administration for loans to pay the expense of planning one or more low-rent housing projects in the City of Melbourne. Subsequent to this action^ the Commissioners also approved an Agreement providing for cooperation by the City in the development and operation of the projects. The Agreement, called a ‘Cooperation Agreement,’ was executed by the City and by the Melbourne Housing Authority on March 26, 1963, and then became a valid and binding contract on both parties. “After these actions and assurances by the City, the Public Housing Administration entered into contracts with the Melbourne Housing Authority providing for assistance in the planning, development, and operation of a project. Under the contracts, substantial loans have been made to the Local Authority for the purchase of the site of the project and the preparation of plans for the development. The plans have been completed and all that now prevents the start of construction is the failure of the City to rezone a portion of the site to permit the construction of duplex apartments. These contracts would never have been executed and the loans would never have been made except upon the assurance that the Public Housing Administration and the Local Authority would have the cooperation of the City in the development and operation of the projects.
“Paragraph 6(c) of the Cooperation Agreement commits the City to make such changes in any zoning of the site and surrounding territory of such projects- as-are reasonable and necessary for the development and protection of such project and surrounding territory. The City of Melbourne certainly has the legal power to-make the necessary zoning changes- and! its failure to do so may result in a substantial financial obligation on the City to-repay the loans made. Public Law 176' of the ¿3rd Congress, 67 Stat. 298, 306, provides that in the event a City after once-approving a project takes action to stop-it, it must negotiate with the Federal Government for the repayment of all costs-incurred by the Local Authority in connection with the development. We interpret this to also include failure to- act under a valid and binding agreement if such failure prevents the development of the project.
“We would consider the City’s failure to' abide by the terms of its Cooperation Agreement as a breach of contract in which this Agency has a substantial interest. Under our long established policy, such broach of contract would be reported to all other divisions of the Department of Housing and Urban Development. As has been the practice, the other divisions of the Department would not make further commitments for assistance to the City until the breach is-corrected, either by the payment of the cost incurred or take the necessary action to authorize the development of the projects.
“We trust that the City of Melbourne will abide by its contract so that it will not be necessary for us to take this action.
“Sincerely yours,
A. P,. HANSON
Director, Atlanta Regional Office”