379 So.2d 115 (1979)
Jake JONES, Clifton Crews, and Nonnie Redmon, Both Individually and As Members of the School Board of Holmes County, Florida and the School Board of Holmes County, Florida, Appellants,
v.
W.R. BRAXTON, Billy F. Cook, Beverly Dodson, Heston F. Ellis, Elizabeth Gavin, Glen D. George, Kenneth H. Givens, Robert E. Griffin, W.O. Hardy, Doy H. Marshall, D.A. Martin, Lynn E. Mayfield, William K. Parrish, Barbara Penney, Leon C. Smith, Orren R. Smith, Ray Smith, Sara Smith, C.E. (Bill) Taylor, Harold Ward and W.C. Ward, Appellees.
No. NN-76.
District Court of Appeal of Florida, First District.
October 19, 1979.
*116 Jim J. Austin, Panama City, for appellants.
Joseph A. Sheffield of Roberts & Sheffield, Marianna, for appellees.
ERVIN, Judge.
The appellants, individual members of the Holmes County School Board and the school board, appeal from a circuit court order permanently enjoining them from *117 breaching a construction contract to build a new high school and temporarily enjoining them from entering into a contract for construction of an elementary school.
The Holmes County School Board voted to consolidate high schools in Bonifay, Bethlehem and Poplar Springs by constructing one facility. They hired an architect, who drew plans for the school, and advertised for construction contract bids. Shortly afterward, however, three of the board members were replaced in a general election. Thirteen days before the new board members were scheduled to take office, the old board continued plans for the construction of the new school by obtaining advance funding from the state for the project. A construction contract was signed on November 16, 1978. On December 5, 1978, the revised board rescinded the contract. A group of private citizens in Bonifay filed a complaint for an injunction to prohibit breach of the contract.
Appellants argue first that the circuit court had no jurisdiction because the appellees failed to exhaust administrative remedies. This issue was not raised until after the final order was rendered by petition for rehearing. Generally, error cannot be claimed in judicial acts to which objections were not made at the appropriate time. See 3 Fla.Jur.2d, Appellate Review § 95. Since the question of exhaustion of administrative remedies is "not one of jurisdiction... but of policy," we will not review it in this appeal. Department of Revenue v. Joanos, 364 So.2d 24, 25 (Fla. 1st DCA 1978). See also Department of Revenue v. Young American Builders, 358 So.2d 1096, 1100-1101 (Fla. 1st DCA 1978) and National Automobile Insurance Association v. Brumit, 98 So.2d 330 (Fla. 1957).
Next, it is urged that appellees had no standing to seek the injunction. The complaint alleged that appellees were taxpayers and that the actions in breaching the contract were illegal and would increase their tax burdens. While it is true that "taxpayers may maintain suits ... to prevent illegal acts of tax receiving bodies that will increase the burden of taxation ...", Housing Authority of the City of Melbourne v. Richardson, 196 So.2d 489, 492 (Fla. 4th DCA 1967), we conclude, however, that the decision to breach the construction contract was not illegal and that the trial judge erred in overruling the board's decision on a matter properly within its discretion.
Appellees argue that the provisions of Chapter 235 govern the procedure relating to the construction of public schools within school districts, and since that procedure was followed by the former board even up to the point of letting a construction contract, the later board had no discretionary authority to undo that previously done.
Chapter 235, the Educational Facilities Construction Act, is designed, among other things, to establish systematic plans for the construction of educational facilities in order to "meet the current and projected needs of the public education system population as quickly as possible by building ... educational environments ..." Section 235.002. To accomplish those goals, district school boards are mandated at least every five years to conduct a survey which shall include recommendations for both existing and new educational plants. Section 235.15. The board is required to file its recommendations with the Office of Educational Facilities Construction, which shall study the proposed program and submit it together with its findings and recommendations to the State Board of Education. Section 235.16. Additionally, each board is required to adopt annually a capital outlay budget, which shall be in harmony with the educational facilities program as approved by the State Board of Education. Section 235.18. No funds may be expended for construction of educational facilities unless approved by the Department of Education. Id.
In order to determine the extent of control boards exercise over the construction of educational facilities within their districts, we think it necessary to compare the provisions of Chapter 235 with those of Chapter 230, setting out the boards' responsibilities in operating the district school system, and *118 if possible, to harmonize the respective provisions with one another. Chapter 230 delegates to the boards broad powers of control, including the power to determine policies and programs "deemed necessary by [them] for the efficient operation and general improvement of the district school system... .", Section 230.22(1), the power to adopt policies which "it may find... necessary for the improvement of the district school system... .", Section 230.22(5), the power to provide "for the consolidation of schools whenever the needs of pupils can better and more economically be served at other school centers ...", Section 230.23(4)(b), and the power to approve "plans for ... constructing ... school property as prescribed in Chapter 235." Section 230.23(9). Moreover, the boards are charged with developing a district wide school building program, which shall be part of a long time program for the district and, "insofar as practicable, shall be based on the recommendations of a survey made or approved under the direction of the Department of Education." (e.s.) Section 230.23(9)(a). The last provision should be compared with Section 235.014(17), encouraging local initiative "as far as practicable, when constructing new educational facilities ...", and with Section 235.01, promoting joint cooperative efforts by state and local officials "in establishing and maintaining educational plants that will meet public educational needs throughout the state... ."
We see no insurmountable dissonance in the provisions of the two chapters. They do not suggest that the board is vested with control over construction of educational facilities by Chapter 230, yet divested of such control by Chapter 235. We think a reasonable interpretation of Chapter 235 is that once a board has made the initial decision to construct an educational facility, local and state officials, working together, then prepare plans for the facility, which are subject to the approval of the state Board of Education before they may be incorporated into the board's annual capital outlay budget. We do not interpret Chapter 235 to require a board to submit recommendations for new educational plants if its survey does not reveal the existence of a need for their construction. The board appears to be vested with the discretion to determine initially whether or not to propose a new facility. See Section 235.15. Moreover, even though plans are submitted and approved, as here, we do not consider it the legislative intent to divest from a board the right to question the wisdom of its previous action and, if need be, unilaterally revoke it.
If we were to accept appellees' argument that Chapter 235 vests discretion to build or not to build in the state  not the local boards  such an interpretation would do violence to that constitutional provision placing in the school boards control of all public schools. Article IX, Section 5, Fla. Const. (1968). The state may, consistently with the constitution, establish reasonable regulations for the construction of public schools once a board determines whether a new facility need be built. The schools may not be built unless their plans are in accord with established guidelines of the State Board of Education. The state may not, however, force a board to build, nor once a board decides to build, force it to persist in that decision if later events prove the board's course unwise. When a public body exercises its discretionary powers within the ambit of the laws delegated to it, it is not for the courts to determine whether the action of that body is wise, economical or advantageous. The taxpayer's recourse is to the ballot box, not to the courts. Town of Riviera Beach v. State, 53 So.2d 828 (Fla. 1951); Broward County Rubbish Con. Assn. v. Broward County, 112 So.2d 898 (Fla.2d DCA 1959). We conclude there is nothing in Chapter 235 which removes from the boards the discretion to build an educational facility, and once that decision is made, the discretion to revoke it.
Although the board's act in breaching the contract was not an abuse of discretion for which a taxpayer's suit for an injunction provides a remedy, its act does not insulate it from potential damages for *119 breach of the contract. A school board "may be sued in an appropriate action ex contractu on an obligation lawfully incurred by it where the payment of that obligation would not involve an unauthorized disbursement of school funds." 29 Fla.Jur., Schools, § 29, citing Board of Public Instruction v. Knight and Wall Co., 100 Fla. 1649, 132 So. 644 (1931); Section 230.22(4), Florida Statutes (1977). The capacity to be sued on contract implies the power to breach a contract.
Neither was the board's action rescinding the contract violative of Section 237.121(2), Florida Statutes (1977), which provides for personal liability and possible removal of board members "voting to incur an indebtedness ... in excess of the expenditure allowed by law, or in excess of any appropriation ... adopted in the ... budget or amendments thereto... ." Rescission of a contract is not synonymous with incurring a debt.[1]
Since the board's action was not illegal, contrary to the trial court's finding, and since no finding was made regarding whether the board had abused its discretion in an action completely within its authority, there is no basis for judicial intervention. The order appealed from is
REVERSED.
ROBERT P. SMITH, Jr., Acting C.J., and BOOTH, J., concur.
NOTES
[1] In fact, the appellants' memorandum to the trial court and appellate brief suggested irregularities in the letting of the contract which would make it illegal.