TÉRRELL, Justice.
Florida State Turnpike Authority, hereinafter referred to as “Authority,” was created by Chapter 28128, Acts of 1953, Chapter 340/ F.S.A., better known as the Turnpike Act, issued $74,000,000. Turnpike Revenue Bonds, Series of 1955, to finance turnpike project No. 1, extending from a point in Dade County northerly to a point in St. Lucie County near the City of Fort Pierce. Said bonds were validated in State v. Florida Turnpike Authority, Fla., 80 So.2d 337. The Turnpike Act was amended by Chapter 29634, Acts of 1955, under which the Authority proposes to issue Turnpike Revenue Bonds, Series of 1956, in' the sum of $185,000,000 to finance the construction of Project No. 2, extending’from the northern terminus of Project No. 1, at State Road 70 southwest of Fort Pierce, thence in a northwesterly direction through designated counties to a point in the vicinity of the City of Ocala, thence in a general north and northeasterly direction through designated counties, the northern terminus to be at or near the Town of Tisonia on U. S. Highway 17, not far from the city limits of Jacksonville.
Petition to validate Series of 1956 bonds was filed in the appropriate court, order to''show cause'was issued, advertised and served on the state attorney for each judicial circuit through which the turnpike passed and it was published in all counties affected. The state attorneys filed answers to the petition and Philip K. Akra, Maynard C. Burrell, T. Jeff Davis, Tom Earley, E. W. Preston, L. P. Shapley, Robert Simpson and John L. Whitmore were permitted to intervene by counsel. Bernard M. Shotkin intervened personally. The in-tervenors filed answers. At final hearing the chancellor granted motion to strike the answer of Bernard M. Shotkin as not suf-ficent in law to state a defense. Portions of the answer of Philip K. Akra, Maynard C. Burrell, T, Jeff Davis, Tom Earley, E. W. Preston, L. P. Shapley, Robert Simpson and John L. Whitmore were also stricken for failure to state any legal defense. Evidence was submitted by appellee in support of the complaint but no other evidence was adduced. The court entered a final decree validating the bonds from which decree this appeal was prosecuted.
It is first contended that the proposed Turnpike Revenue Bonds will constitute bonds of the State of Florida in violation of Section 6, Article IX of the State Constitution, F.S.A.
*655 The trial court gave a negative answer to this question. The Turnpike Act provides in terms that the Turnpike Revenue Bonds be payable solely from the tolls, revenue and other funds derived from operating the turnpike system and that they will not directly or indirectly or contingently obligate the State of' Florida to levy or pledge any form of taxation for payment of interest or principal thereon, nor will any appropriation be made for such payment. Section 13 of the said Act provides:
“Turnpike revenue bonds issued under the provisions of this chapter shall not be deemed to be a debt of the state or a pledge of the faith and credit of the state, but such bonds shall be payable exclusively from the fund pledged for their payment or authorized herein. All such bonds shall contain a statement on their face that the state is not obligated to pay the same or the interest thereon and that the faith and credit of the state is not pledged to the payment of the principal or interest of such bonds. The issuance of turnpike revenue bonds under the provisions of this chapter shall not, directly or indirectly or contingently, obligate the state to levy or to pledge any form of taxation whatever therefor, or to make any appropriation for their payment. State funds shall not be used, appropriated or expended to construct, reconstruct, maintain, service, repair, purchase or lease any toll road authorized hereunder or to pay the principal or interest of any revenue certificates or other evidences of indebtedness issued for any such purpose, and the legislature does herewith determine that any such use of state funds would violate the constitution of the State of Florida and all such bonds shall contain a statement on their face to this effect.”
The face of the bonds condemns the contention that the state should in any way be held responsible for taxes to service them. State v. Florida State Turnpike Authority, supra, involved a similar question as applied to Turnpike Revenue Bonds, Series of 1955, and we think that case settles this question contrary to the contention of appellant. See also State ex rel. Watson v. Caldwell, 156 Fla. 618, 23 So.2d 855; State v. Board of Control, Fla., 65 So.2d 469, and State v. State Board of Education, Fla., 67 So.2d 627.
.It. is next contended that as prerequisite to locating the route and termini of Project No. 2, the Authority abused its discretion in that it failed to make adequate engineering studies and to meet other preliminary requirements of the Turnpike Act.
It appears that the engineers employed to make these studies and surveys were among the .most eminent in the country. The evidence adduced refutes any • suggestion of incompetency, shoddy or inaccurate studies or surveys. There is also criticism of the revenue estimates that may normally be expected to support the project but the evidence submitted completely refutes this criticism. The thoroughness and quality of the studies and surveys preliminary to approving Project No. 2 show that the requirements of the. Turnpike Act were met.
The' brief of appellant on this point is devoted primarily to a criticism of the location of the route and termini of Project No. 2. The major portion of this argument is beside the question as we shall now show.' Under Section 3, Turnpike Act, the Authority was directed to make thorough study of an East Coast or Central Florida route to a point in Duval County. Under F.S. § 340.29, F.S.A., the Authority was directed to submit its findings and recommendations as to feasibility of constructing such a route to the Governor and the Legislature at least sixty days before convening the regular 1955 session. Pursuant to this mandate, the Authority advised the Governor and the Legislature that the East Coast and Central Florida route for extending the turnpike to a designated point in Duval County- were economically feasible but for reasons stated in *656 the report recommended construction along the Central Florida route.
On consideration of this report and recommendation, the Legislature enacted Chapter 29634, Acts of 1955, amending Chapter 28128, Acts of 1953, wherein it recited the recommendation and study of the Authority and authorized it to construct and operate an additional turnpike project to-be located as the Authority may determine suitable: “Beginning at a point in St. Lucie county, thence in a generally northwesterly direction to a point in Lake county, thence in a generally northerly direction through Marion county to a point in Duval county, in the vicinity of the metropolitan area of the city of Jacksonville, provided however, that the exact" route and termini shall be as provided in § 340.06" (6).” F.S. § 340.03(2), F.S.A. It affirmatively appears that the Authority followed the legislative mandate in locating the route and termini.
From this it follows that the general route and termini of Project No. 2 were defined by the Legislature. Only the interstitial aspects were committed to the discretion of the Authority and as to these it was required to follow F.S. § 340.06(6), F.S.A. There was no attempt to show that the Authority did not follow legislative directions as to locating the general route and termini of the project. Evidence by- the Authority reveals that its determinations were made from careful study, assisted by those well qualified to discharge the trust imposed in them. The courts have universally refused to interfere with fair judgments and findings of those who execute delegated authority. Town of Riviera Beach v. State, Fla., 53 So.2d 828.
It is next contended that the Turnpike Act amounts to an unwarranted and improper delegation of legislative power to the Authority.
This charge is grounded primarily on the allegation (1) that the power to designate points of ingress and egréss enables the Authority to control the economic life of cities, towns and counties along the highway, and (2) the Turnpike Act clothes the Authority with power to establish an unlimited number of projects financed by numerous bond issues without the control of any state agency. We do not list other aspects of this charge for the reason that in our view they are wholly devoid of merit.
The very purpose of the Turnpike Act as stated in Section 2 “is to facilitate vehicular traffic, diminish the present handicaps and hazards and promote safety on the congested highways in Florida.” F.S. § 340.02, F.S.A. A turnpike system designed and constructed for such a purpose must conform to standards that will effectuate that purpose. Whether or not it will turn trade to one’s filling station, grocery store, hotel, motor court, hot dog purveyor or peanut vending machine is beside the point and has nothing to do with facilitating vehicular traffic, diminishing handicaps and hazards and promoting safety on congested highways. The Authority is staffed by those carefully selected by the Governor and approved by the Senate, the Act defines the projects that may be undertaken, and beyond this the Authority cannot go without legislative authority.
All such objections were considered and disposed of contrary to the contention of appellant in State v. Florida Turnpike Authority heretofore alluded to. Aside from this the power delegated to the Authority is ministerial or administrative; it is in no sense legislative and the Legislature defined limitations within which it must be exercised. So long as the Authority acts within the ambit defined for it, courts will not interfere. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 32 L.R.A.,N.S., 639; Mayer v. Dade County, Fla., 82 So.2d 513; People v. Illinois State Toll Highway Comm., 3 Ill.2d 218, 120 N.E.2d 35, 43; State ex rel. Ohio Turnpike Commission v. Allen, 158 Ohio St. 168, 107 N.E.2d 345; Meisel v. *657 Tri-State Airport Authority, 135 W.Va. 528, 64 S.E.2d 32; City of Newark v. New Jersey Turnpike Authority, 12 N.J.Super. 523, 79 A.2d 897, affirmed 7 N.J. 377, 81 A.2d 705.
The intervenors have joined in this appeal and filed a brief in which they argue three questions: (1) judicial fixing of the northern terminus “in the vicinity of the town of Tisonia, Florida” was not justified; (2) the circuit court should not have made any adjudication with respect to the use or abuse of the Authority’s “discretionary powers,” and (3) the advancement of monies by the State Road Department to the Turnpike Authority is forbidden by Sections 10 and 4, Article IX, Constitution of Florida.
 In response to questions (1) and (2) of the intervenors, we think they were raised by the pleadings, were before the trial court and were ruled on correctly; in fact, we think question (1) was concluded by State v. Florida State Turnpike Authority, supra. The decree adjudicating the point was based on competent undisputed evidence; while it had to do with the southern terminus of Project No. 1, the same logic applies to the northern terminus of Project No. 2. Careful study reveals no theory under which we would be justified in reversing the court below on either of these points, neither do. we find any basis for the charge of abuse of discretion.
As to the third question, intervenors say they do not think it was decided in State v. Florida Turnpike Authority, suprá, but that if it was so decided, it should now be reconsidered. We think the point was concluded in the last cited case. It is not amiss to point out, however, that we are now confronted with a state entity provided to construct Project No. 2, that it has no power to tax and is without funds until the bonds in question have been approved and sold. The Legislature limited the advances by the Road Department to the Authority to payment for preliminary surveys and other incidental expenses. The Turnpike Act requires such funds as an advance to be repaid from the proceeds of the bonds as soon ás they are marketed. It was nothing more than a temporary arrangement to enable the Authority to get on with the project. Temporary assistance of one state entity to another in a situation like this does not amount to a pledge or loan of the state’s credit to an individual, company, corporation, or association contrary to Section 10, Article IX of the Constitution, nor is there any violation of Section 4, Article IX of the Constitution.
It follows that on the basis of the argument’and authorities cited herein, the final decree of validation must be, and is hereby, affirmed.
Affirmed.
DREW, C. J., and THOMAS, HOB-SON, THORNAL and O’CONNELL, JJ., concur.
ROBERTS, J., agrees in part and dissents in part.