ROBERTS, Chief Justice.
This cause is before us pursuant to an appeal from a decree of the Circuit Court of the Second Judicial Circuit in and for Leon County, validating $25,000,000 Florida Development Commission, University System Improvement Revenue Bonds, proposed to be issued by the Florida Development Commission to finance the construction of buildings and facilities for the universities of higher learning in Florida.
This court has jurisdiction by virtue of Article V, Section 4(2), Constitution of the State of Florida, F.S.A.
On February 16, 1962, the Board of Control of Florida adopted a resolution providing a method for the acquisition and construction of necessary capital improvements to the University System of Florida through a combined and consolidated capital improvements program and established a Revolving Trust Fund for the purpose of financing such capital improvements. Said capital improvements consisted of the construction, acquiring and equipping of numerous buildings at the University of Florida, Florida State University, University of South Florida, Boca Raton University, and Florida A. & M. University. It was pledged that all uncommitted student building fees charged each semester to all regularly enrolled students would be deposited into the Revolving Trust Fund. This resolution was approved by both the State Board of Education and the State Budget Commission.
The Florida Development Commission, on February 28th, 1962, adopted a resolution authorizing the issuance of not exceeding $25,000,000 revenue bonds to finance the cost of the proposed project and authorizing the leasing of the project to the Board of Control for rental payments sufficient to pay and discharge the principal and interest on the proposed revenue bonds. This resolution pledged that the rentals to be remitted to the Florida Development Commission would be paid from moneys on deposit in the Revolving Trust Fund of the Board of Control and, to the extent necessary, from such other funds of the Board of Control legally available for such purpose.
This resolution also expressly recited that such revenue bonds would not be obligations, directly or indirectly, of the State of Florida and that no holder thereof would have any right to require any appropriation by the Legislature of Florida for the payment of the rentals due under the Lease- *71 Purchase Agreement or for the payment of principal and interest on the revenue bonds.
On April 3, 1962, the State Board of Administration approved the proposed revenue bonds as to legal and fiscal sufficiency. Thereafter, the Lease-Purchase Agreement covering the proposed project was entered into between the Board of Control and the Florida Development Commission.
At the validation hearing in the lower court, evidence was introduced to prove that an urgent and immediate need for the acquisition and construction of the proposed project existed. It also showed that the potential growth of Florida, both industrially and from the standpoint of population, would place tremendous demands upon the University System in the future. If the necessary facilities are not provided, then this potential growth will be materially and adversely affected.
The evidence developed both from state sources and from an independent, nationally recognized firm of experts showed that the student building fees estimated to be realized over the life of the proposed revenue bonds would be in excess of the amounts required to fully pay principal and interest on the obligations when due. The testimony further demonstrated that the student building fees estimated to be collected from each university would be substantially in excess of the cost of the capital improvements to be expended for the benefit of each such university.
After a full hearing, the Circuit Judge entered a decree validating the proposed issue of said revenue bonds from which this appeal was taken.
The first question urged for determination is as follows:
“Can the Board of Control combine and consolidate certain capital improvements proposed to be acquired and constructed at the individual, universities into one complete project under the direction of the Board of Control and deposit into a common revolving trust fund the student building fees collected from each university?”
This question must be answered in the affirmative. Authority for a combined project of this type may be found in the statutory as well as case law.
Section 240.04, F.S.A., gives the Board of Control jurisdiction and complete management and control over each and every institution in the university system. The Board of Control is specifically empowered to:
“ * * * build, construct, change, enlarge, repair and maintain any and all the buildings or structures now in existence, or that may hereafter be necessary for each and every one of said institutions created and maintained by law; to purchase and acquire all lands and property necessary for same of every nature and description whatsoever; to care for and maintain the same, and to do and perform every other matter or thing requisite to the proper management, maintenance, support and control of each and every of the said institutions necessary or requisite to carry out fully the purposes of this chapter; and for raising to, and maintaining them at, the proper efficiency and standard as required in and by the provisions of law, but at all times subject to the supervision and control of the state board of education.”
Implicit in the foregoing statutory language is a grant of the power and the duty to perform the enumerated functions in the most economical and efficient manner. Nothing in Chapter 240 indicates that the Board may not combine the various projects of the University System for financing purposes so long as the proposed projects are within the scope of the Board’s responsibilities. Although the precise financial arrangement herein proposed *72 is not specifically referred to in the statute, authority for it is inherent within the broad statutory grant of power to build and construct any and all buildings that may be necessary for each and every one of the institutions in the University System.
Further, in several analogous situations we have previously approved the combining of separate facilities into one project for the purpose of financing by revenue certificates. We approved such combined project financing in State et al. v. Florida State Improvement Commission (Fla.1950) 48 So.2d 156, wherein the proceeds of validated bonds were used to finance extensions of and additions to existing State Farmers’ Markets located in Dade, Hardee and St. Lucie Counties. Our opinion in said case reflects the following helpful language:
“We are concerned here with extension to three different projects in widely separated places, each to be operated separately producing incomes in different amounts. The proposition is to pool the income from the three projects and apply it to the indebtedness of all without regard to the amount each produces. We think -that part of the quoted statute immediately preceding and following the proviso when read with Section 603.16, Florida Statutes 1941, F.S.A., completely negatives appellant’s contention. Section 603.16, in defining the powers of the State Agricultural Marketing Board authorizes it to acquire sites and erect the necessary marketing facilities thereon. In so doing, the Board is not confined to facilities in a single county or to a single facility. It is a State Board, its jurisdiction is state wide and it may promulgate a ‘plan or design, a scheme or proposal’ that will comprehend the provision of facilities in several localities. That is what is being attempted here and in view of the powers conferred by the statute we cannot say that the State Agricultural Marketing Board was exceeding its powers.”
See also Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677, where the construction of several dormitories and a dining hall at the various state universities were financed in essentially a consolidated manner.
The second question presented is as follows :
“Have the Florida Development Commission and the Board of Control, respectively, the authority to enter into a lease-purchase agreement to be effective until the proposed revenue bonds and the interest thereon have been fully paid?”
Treating the multiple facets of this question individually, it is first clear that the Florida Development Commission has the statutory authority to enter into the type of lease-purchase arrangement contemplated herein.
F.S. Section 288.15, F.S.A., provides in part:
“(6) In order to carry out the objective and purposes of this chapter the commission is authorized to acquire, own, construct, operate, maintain, improve and extend public buildings, facilities or works within the state which are of the character hereinafter specifically mentioned. All public buildings, facilities and works which the commission is authorized to own, construct, operate and maintain must be such as can ultimately be owned and operated by an agency, department, board, bureau or commission of the state. * * *
* * *
“(e) Public buildings, facilities and additions or improvements to existing buildings and facilities for ultimate use in connection with any of the several state institutions, departments, bureaus, boards or commissions, and in furtherance of this paragraph, the board of commissioners of state institutions and the state board of education are author *73 ized to cooperate with the commission and to do and perform all acts and things necessary thereto. Any property acquired by the commission under the provisions of this chapter may ultimately be conveyed to the state free and clear of all debt or other encumbrance.
“(f) Said commission is hereby authorized to collect reasonable rentals, tolls or charges for the use of public buildings, facilities or works constructed, acquired or owned by it and for the products and services of the same exclusively for the purpose of paying the expenses of improving, repairing, maintaining and operating its facilities and properties and paying the principal and interest on its obligations. (Emphasis supplied.)
* * * * * *
“(11) * * * Under no circumstances shall any bonds, notes or certificates issued under this chapter or any other indebtedness created by the commission be construed as an obligation of the state, nor shall the state under any theory be bound therefor. They shall be solely and only the obligations of the commission in its corporate and representative capacity and shall be secured only by such revenues as shall be pledged as security for the payment thereof.
******
“(IS) Subsections (6) and (14) shall be liberally construed to effectuate the objectives and purposes thereof and the public policy of the state as hereby declared. * * * ”
Without belaboring the point, the Florida Development Commission obviously has the authority to enter into the instant lease-purchase arrangement. Subsection (6) (e) of Section 288.15, Florida Statutes, F.S.A., specifically empowers the State Board of Education and the Development Commission to cooperate with each other in carrying out the objects and purposes of Section 288.15(6), Florida Statutes, F.S.A., which includes the construction of public buildings and facilities. Such language must of necessity refer to the educational facilities under the jurisdiction of the State Board of Education which includes State University System buildings.
Chapter 240, Florida Statutes, F.S.A., authorizes the State Board of Control, subject to the supervision and control of the State Board of Education, to build and construct all buildings or structures that maybe necessary for each and every institution in the University System. (F.S. § 240.04, F.S.A.).
Section 240.11, Florida Statutes, F. S.A., constitutes the Board as a body corporate having the power to contract and be contracted with; to make purchases of lands and tenements and gives the Board all the powers of a body corporate for all the purposes created by or that may exist under the provisions of Chapter 240. If the aforementioned powers are analyzed in light of the Board’s duty to control and manage the several institutions in the University System, it is obvious that the Board has authority to enter into a lease-purchase arrangement designed to give the State Board of Education title to the various facilities to be constructed. F.S. Section 240.11, F.S.A., and F.S. Section 229.08(4), F.S.A. When the statutory language of Chapters 240, 229 and 288 is read and considered together with the approval by the State Board of Education of the resolution of the Board of Control creating this project, it is manifest that the lease-purchase arrangement represents a perfectly proper method of accomplishing the proposed construction.
The final aspect to this question is whether the Board of Control has the authority to irrevocably pledge as rentals the student building fees collected and paid into the revolving trust fund. This question was answered in the affirmative in Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677, wherein *74 this court held that fees of this nature were not state funds and therefore may be anticipated and funded in the form of revenue bonds. Accord., State v. Board of Control, Fla., 1953, 66 So.2d 209.
Question three posed by the appellant is as follows:
“Are revenue bonds issued by the Florida Development Commission payable solely from rentals paid by the Board of Control from student building fees on deposit in the Revolving Trust Fund established by the Board of Control and from other legally available funds ‘bonds’ within the prohibition of Section 6, Article IX, Constitution of Florida?”
Section 6, Article IX, Florida Constitution, provides in part:
“The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, * * *
Securities that provide that they are not to be a debt of the state, and are not páyable from any funds other than the income and revenue pledged for payment thereof, do not fall within the constitutional prohibition. State et al. v. Florida State Turnpike Authority, Fla.1956, 89 So.2d 653.
The administrative wisdom of this program is not within the orbit of judicial review, and therefore was not presented or passed upon by this court. See State et al. v. City of Daytona Beach, 118 Fla. 29, 158 So. 300.
The record before us reflects, and thé Chancellor so found, that the resolutions of the Board of Control and the Florida Development Commission authorizing the issuance of these bonds, as well as the language of the bonds themselves, provide that such bonds shall not be obligations, directly or indirectly, of the State of Florida and'no holder or holders thereof shall have 'any right to compel or require any appropriation by the Legislature of Florida for the payment of the rentals due under the lease-purchase agreement, herein described, or for the payment of the principal and interest on such bonds. Revenue bonds of this nature do not constitute “bonds” of the State of Florida or any political subdivision of the State of Florida, within the prohibitions of Section 6, Article IX of the Florida Constitution. It would hardly seem possible to express the non-liability of the state more conclusively. See State v. Florida State Improvement Commission (1948) 160 Fla. 230, 34 So.2d 443 and F.S. Section 288.15 (11), F.S.A.
For the above reasons, and no error appearing, the final decree appealed from should be and it is hereby
Affirmed.
TERRELL, THOMAS, THORNAL and HOBSON (Ret.), JJ., concur.