ERVIN, Justice
(dissenting):
In these appeals from the decree of the Circuit Court of Leon County, Florida, validating Florida Development Commission Sunshine Skyway Revenue Bonds ira the amount of $26,500,000.00, the principal objection raised by Appellants is that Ap-pellee, the Florida Development Commission, had covenanted in 1949 that additional tolls would not be charged the traveling public using the Sunshine Skyway and therefore said bonds should not be validated since such tolls are the only revenues proposed to be pledged for the payment of these bonds.
The impediment which the Appellants claim precludes the imposition of further tolls on the Sunshine Skyway arose from a covenant agreement or commitment entered into between local and state author *270 ities. The Florida State Improvement Commission, whose name has been changed to the Florida Development Commission (the state authority created to plan and finance public facility projects both state and local, primarily through the issuance of self-liquidating revenue certificates and bonds), adopted a resolution on May 26, 1949 agreeing to accept from the St. Petersburg Port Authority (the local authority empowered to finance and construct a Lower Tampa Bay Bridge) instruments of conveyance to all of the latter’s assets it owned and held for the purpose of constructing and financing a self-liquidating toll bridge project across Lower Tampa Bay, subject to certain conditions set forth in the resolution. One of the conditions therein which the Appellants contend amounts to a covenant impediment to the imposition of additional tolls on the Sunshine Skyway to service the said proposed new bond issue of $26,500,000.00, reads as follows:
“10. The Commission agrees for itself and its successors that if and when the bonds issued for construction of said bridge have been paid that this Commission will convey the bridge and all other properties acquired by the Commission in connection with the project to the State Road Department the said bridge to be operated as a free bridge." (Emphasis supplied.)
On May 27, 1949 the St. Petersburg Port Authority, with subsequent approval of the City of St. Petersburg, adopted its resolution accepting the terms of said resolution of the Florida State Improvement Commission (now Florida Development Commission).
Contemporaneously with the adoption of these resolutions, the Florida Legislature by the enactment of Chapter 26163, Special Acts of 1949, Laws of Florida, duly authorized the disposition of said assets by the Port Authority.
Subsequent and pursuant to such resolutions and statutory authority, the St. Peters-burg Port Authority on or about July 1, 1949 transferred all of its assets, valued at $377,724.24, to the Florida State Improvement Commission. Also transferred to the Commission was the Port Authority’s existing bridge franchise. Thereafter, the Florida State Improvement Commission issued its Lower Tampa Bay Bridge (Sunshine Skyway) bonds in the principal sum of $21,250,000.00, dated September 1, 1951, from the proceeds of which was constructed the existing Sunshine Skyway Bridge. This bond issue was validated in the Circuit Court of Pinellas County and the decree of validation affirmed by the Supreme Court of Florida on April 24, 1951. See State v. Florida State Improvement Commission (Fla.), 52 So.2d 277. In such validation the said resolutions were attached as exhibits to the petition for validation. It is quite apparent the covenant quoted above was a matter of wide public interest and importance at the time it was executed and was part and parcel of the public agreements and considerations upon which said validation was predicated.
The proceeds to be derived from the proposed bonds in the instant validation proceedings are to be used to four-lane and improve the existing two-lane bridge system across Lower Tampa Bay known as the Sunshine Skyway and to refinance or refund outstanding bonds in the amount of $3,654,000.00 which were issued in 1951 by the Florida State Improvement Commission (now known as the Florida Development Commission) to finance the construction of the present two-lane Sunshine Sky-way. The proposed new bonds are dated March 1, 1966 and will mature thirty (30) years thereafter.
The Appellee contends that the alleged covenant impediment to the imposition of additional tolls is without legal basis for the following reasons:
(1) It was a nullity because there was no statutory authority for the making of such covenant or commitment between the Commission and the Port Authority agreeing that when the original Lower *271 Tampa Bay bridge bonds were retired the Sunshine Skyway bridge would be operated free of tolls.
(2) That said covenant impediment would be an unconstitutional surrender or bargaining away of the state’s power to finance, construct or improve a segment of the state road system.
(3) That even though the covenant impediment contained in the resolution adopted May 26, 1949 by the Commission was valid when executed, the Legislature by a subsequent enactment, Chapter 65-996, Laws of Florida, General Laws of 1965, has authorized the proposed new bonds in the principal amount of $26,500,-000.00, thus abrogating said covenant.
I conclude from my study of this case that said covenant to free Sunshine Skyway bridge of tolls upon the-payment of all of the original Lower Tampa Bay bridge bonds in the amount of $21,250,000.00 is a valid subsisting and binding agreement on the part of the Appellee upon which the traveling public has the right to rely, and will so remain unless and until the Legislature specifically otherwise provides. The covenant has the effect of precluding the issuance of any new toll revenue supported bonds such as is proposed herein in the absence of express legislative authority therefor.
Chapter 26163, Laws of Florida, Special Acts of 1949, in part provides:
“That St. Petersburg Port Authority * * * be and it is hereby empowered to sell, lease, convey, transfer or otherwise dispose of any and all of its property and its assets of any kind every nature whatsoever to any agency, board, commission, department or other subdivision of the State of Florida or to the City of St. Petersburg, without limitation upon such disposition except that the disposition shall be only with and upon approval by resolution of the City Council of the City of St. Petersburg, and provided further that such disposition by the Authority and approval by the - City shall not be subject to any provisions or limitations of any- nature of the City Charter of the City of St. Petersburg or any prior enactments relating to St. Petersburg Port Authority concerning disposition of City of St. Petersburg property or Port Authority property.” (Emphasis supplied.)
The argument made by Appellee that the underscored language in said statute precluded the said covenant in the Appellee Commission’s resolution of May 26, 1949 is without merit. All that this statutory language meant was that the Port Authority was accorded by the Legislature unlimited statutory power to dispose, sell and transfer its property and assets pertaining to a bridge over Lower Tampa Bay to a.ny state agency, board or commission upon such terms and conditions as in its discretion it might agree upon. The only qualifier or limiter upon this unrestricted statutory power of disposition of the Port Authority was that same could be consummated only with the approval of the City Council of the City of St. Petersburg. This language by no means precluded the Port Authority from insisting upon any conditions or commitments on the part of the Florida State Improvement Commission that it, the Port Authority, deemed appropriate in exercising such power of disposition.
Wholly aside from Chapter 26163 ap-pellee had statutory authority of its own to execute the covenant to outline the future disposition of the bridge and to assure the public that tolls thereon would be terminated eventually.
Reference to several provisions of law relating to general powers of the Florida State Improvement Commission and the State Road Department authorizing the making of agreements by either of them *272 with local units or authorities to implement the financing and construction or acquisition of highways, bridges or other public facilities discloses there is nothing therein that would prohibit covenants precluding further tolls or charges after initial funding obligations of a particular project are retired.
A careful review of the rather voluminous statutes pertaining to the authority of the Florida State Improvement Commission and its successor, the Florida Development Commission, as well as those pertaining to the State Road Department, discloses there is ample delegated statutory authority in each of said agencies to make the said covenant or commitment. For example, the State Road Department has the power pursuant to F.S. § 341.63, F.S.A., to agree with a local authority to take over the operation of a road or bridge project and
“* * * either operate such project * * * free from tolls or may fix and collect such tolls for the use thereof as it may from time to time see fit as may be provided in such agreement * * * ” (emphasis supplied)
See State v. Florida State Improvement Commission, 159 Fla. 338, 31 So.2d 548, which explains in great detail the operation of F.S. § 341.63, F.S.A. See also State v. Florida Development Commission (Fla.) 142 So.2d 69. Similarly, F.S. § 288.15(6) (f), F.S.A., authorizes the Florida Development Commission “to collect * * * tolls or charges for the use of public * * * facilities * * * constructed, acquired or owned by it * * *” Section 288.15(6) states that all such public facilities “ * * must be such as can ultimately be owned and operated by an agency * * * of the state * * * ”
That the Florida State Improvement Commission (now the Florida Development Commission) had authority to enter the agreement with the St. Petersburg Port Authority, see F.S. § 288.13, F.S.A. (formerly § 420.04, F.S.), which reads:
“Cooperation with other units, boards, agencies and individuals. — Express authority and power is hereby given any county, municipality, drainage district, road or bridge district, school district or any other political subdivision, board or commission in the state to make and enter into with the commission, contracts and leases * * *. The Commission is hereby expressly authorized to make agreements with and enter into any and all contracts with any political subdivisions of the state.”
Thus there is ample delegated authority to impose or not to impose tolls for the use of such facilities, subject always to the paramount authority of the State acting through the Legislature to modify such delegated authority except in situations where contractual obligations cannot constitutionally be impaired.
The contention that a covenant on the part of a state agency to operate a bridge free of tolls after an original issue of toll bridge bonds has been retired amounts to an unconstitutional bargaining away of state governmental power to subsequently finance the construction of a new or widened bridge is also without merit. Such an agreement between a state and a local agency is revocable by the Legislature since both agencies are creatures of the Legislature and subject to its modifying power. In the instant situation no bondholders’ contract rights or other unimpairable rights are involved. The covenant to free the bridge of tolls, while binding upon the state agency that made it, i. e., Florida State Improvement Commission and its successor the Appellee Florida Development Commission, may be abrogated by the Legislature at any time. Nevertheless it is a covenant that should be honored by the state agency making it unless the agency is released from its commitment by the Legislature. The covenant *273 is one of the important valuable considerations that resulted in the surrender by the local authority to the State Commission of the local power to finance, construct, control and operate the proposed bridge. The desire of the public, and particularly of the people in the immediate vicinity of the bridge, to be free eventually from paying tolls thereon was a matter of great public importance and constituted an ultimate goal that could be validly anticipated and provided for in the agreement passing local control of the proposed bridge to the State. This covenant to be free of tolls eventually was a valuable consideration for the public agreed upon in the negotiations between the Commission and the Port Authority and should not be regarded lightly.
Once the State Commission agreed that the bridge should be free of tolls after the original bonds were retired, it exhausted its legislatively delegated power as to this particular subject. Compare Orange City Water Company v. Town of Orange City (Fla.), 188 So.2d 306, where it was held that when delegated authority is exercised by an administrative board in certain circumstances such authority “once executed, is exhausted.” There is nothing in this record to indicate that the covenant in question once adopted and becoming a part of the agreements resulting in the validation of the original Sunshine Skyway bonds can be rescinded by the Commission unless the Legislature so authorizes. Only the Legislature in a proper enactment thereafter could expressly rescind and set aside the covenant. Furthermore, the contention that the impediment covenant bargains away governmental power to thereafter finance the construction of a new or widened bridge is untenable because the particular subject matter involved is not governmental in character. In Yon v. Orange County (Fla.), 43 So.2d 177, our Court appears to support the view that acquisition of rights of way for a state road project is not a governmental function. Further, the covenant relates only to one isolated highway project, the Sunshine Skyway, and does not unduly curtail the general highway authority of the State Road Department. The covenant does not constitute an abuse of administrative discretion nor is it contrary to public policy. The covenant for a free bridge after retirement of the original bonds was made in the context of conditions then envisioned, but the same does not prohibited possible future action by the Legislature in the interest of the public welfare to review and reconsider the subject in the light of future traffic needs and conditions.
Chapter 65-996, Laws of Florida, General Laws of 1965, provides as follows:
“Section 1. The bonded indebtedness of the Sunshine Skyway shall not be refinanced unless the proceeds are used exclusively for the construction, reconstruction or four-laning of present facilities at the Sunshine Skyway.
“Section 2. All state and county agencies and boards and all municipalities and political subdivisions of the state are prohibited from refinancing or attempting to refinance said bonded indebtedness unless the proceeds are used solely as provided by this act.”
It is quite clear that this act does not authorize the abrogation of the “bridge free of tolls” covenant of 1949. It gives no notice nor expresses any intention to such effect; it merely prohibits the existing Sunshine Skyway bonded indebtedness incurred in 1951, of which $3,645,000.00 remained outstanding as of March 1, 1966, from being refinanced unless the proceeds are used exclusively for “four-laning of present facilities at the Sunshine Skyway.” This language makes no reference to tolls or to gasoline tax funds which are customarily resorted to as revenue sources pledged for the payment of highway or bridge bonds. The act is really an ambiguous confusing non sequitur. It authorizes the refinancing or refunding of the existing bonds but does not allow any of the proceeds therefrom to be used to retire the existing bonds. Instead, it provides the *274 proceeds from the refinancing' shall be used .exclusively for ’four-laning of present facilities at the Sunshine Skyway. If the bonds are merely to be refinanced or refunded from whence would come the additional funds to finance the construction of the four-laning project? At any rate, the act does not expressly or by implication authorize the issuance of new toll bridge bonds to provide for the four-laning of the Sunshine Skyway, nor does it abrogate the 1949 covenant precluding additional tolls on the Skyway.
I take note of the language in the lease-purchase agreement covering the Sunshine Skyway Bridge entered into between the Florida State Improvement Commission and the State Road Department on September 22, 1950, more than a year after the said resolutions of May, 1949 as follows:
“Nothing herein, however, shall be construed as requiring or compelling the removal of tolls at the termination of this agreement or at any time thereafter.”
I do not conclude this language frees the Appellee Florida Development Commission from its commitment with the Port Authority to see to it the bridge is freed of tolls at the time the existing bonds are retired. Certainly a subsequent lease-purchase agreement the Commission made with a third agency, the State Road Department, does not authorize or justify the Commission’s repudiation of its covenant with the Port Authority. The maxim res inter alios acta applies. Furthermore the language quoted from the lease-purchase agreement is ambivalent and leaves open the question whether tolls may be removed from the bridge in the future by the State Road Department.
In equity if the Commission were a private individual it would be estopped to repudiate its commitment. Even though it is a public agency, I find no warrant in the statutes for the Commission to disavow its covenant. Appellee’s plain duty is to honor the covenant. It will be time enough when the existing bonds are retired for the Commission to determine whether the State Road Department can be induced or required to carry out the Commission’s covenant guaranteeing a bridge free of tolls rather than for the Commission in disregard of its covenant to attempt now to issue new bonds which would unquestionably operate to repudiate its covenant to free the bridge of tolls when the present bonds are liquidated.
To recapitulate, it appears to me that on principle it would be wrong to allow the Appellee Commission without the express approval of the Legislature to repudiate its covenant to free the Sunshine Skyway bridge of tolls when the existing bonds are paid by issuing the proposed new bonds which will require continuation of tolls long into the future. This covenant was inserted into an important public document; it represented a valuable consideration for the public to be eventually free of tolls on the bridge. It is not an unusual one and many times similar covenants have been included in agreements of the Appellee Commission and in lease-purchase agreements of the State Road Department covering the acquisition or construction of local highways or bridge projects in providing the terms for the financing, maintaining and operating of such facilities, as well as their future disposition and operation after initial funding obligations are retired.
The covenant was solemnly entered into between two public agencies, local and state, to subserve a public purpose and objective pursuant to delegated statutory authority. Neither has the right to repudiate it. Only the Legislature from a mature overall consideration of the public welfare has the power to abrogate it.
In Trustees of the Internal Improvement Fund v. Bailey (Fla.1862), 10 Fla. 112, our Court long ago admonished the repudiation of public contractual agreements. It approved the concept that “ * * * the fair fame and reputation of the state * * * cannot be maintained by disregard of a solemn compact, * * * ” (at p. 121).
*275 Later, in Gay v. Southern Builders Inc. (Fla.), 66 So.2d 499, 501, we said:
“Contracts are made with the idea that they shall he kept and performed. The State expects and uses the courts to require performance on the part of contractors doing business with it. Decency and fair play require that public officials perform the contracts entered into by them in behalf of the State. It is too much to expect and require private citizens and contractors to perform contracts when the State itself, or its officials, refuses to perform and breach their contracts at will. In the case of State ex rel. Wadkins v. Owens, Fla., 62 So.2d 403, 404, this Court said:
“ ‘Fair dealing is required by all parties and public officials should set the example.’ ”
I conclude that the public covenant should stand unless in its wisdom the Legislature abrogates it. It follows at least for now that the additional tolls proposed to service the new bond issue cannot be imposed. The decree of the Circuit Court should not be affirmed.